## Clay Harrelson v. The State.

No. 576.   Decided May 18, 1910.

Rehearing Denied December 21, 1910.

### 1.—Murder—Special Venire—Motion to Quash—Capital Offense.

Where upon trial of murder, the defendant filed a motion to quash the special venire on the ground that it did not state the nature of the offense against defendant, or that he was charged with a capital offense, and because the certificate of the clerk was defective as to the date of the writ; but it appeared that said date in the certificate was a clerical error, and that the writ was made returnable on the proper date, and that the jurors appeared in response thereto, there was no error in overruling the motion.

### 2.—Same—Statutes Construed—Liberal Construction.

Where the writ of special venire discloses the style, number of the case, and the court in which the same was pending, and gave the day and date to which the same was returnable, it was not necessary that it should state that the case was a capital case or the nature of the crime charged.   The statutes relating to this writ are for the most part directory and should be liberally construed.   Following Roberts v. State, 30 Texas Crim. App., 291.

### 3.—Same—Evidence—Motive—Other Transactions.

Upon trial of murder there was no error in permitting the State to show that deceased had been a principal State's witness against defendant's brother in a felony case, and that upon the trial of said case the jury returned into court and asked that the testimony of the deceased should be re-read to them by the court's stenographer, which request was granted, and that thereafter the jury found defendant's brother guilty; it appearing that the defendant knew the relations of the deceased to said case at the time of the said trial. Said testimony was admissible to show motive.

### 4.—Same—Charge of Court—Provoking Difficulty—Converse Proposition.

Where upon trial of murder, the court did not charge on the issue of provoking the difficulty or in any way limit defendant's right of self-defense, there was no error in refusing defendant's special requested instruction, submitting the converse of the proposition of provoking the difficulty.

### 5.—Same—Charge of Court—Limiting Testimony—Other Offenses.

Upon trial of murder, where the State introduced testimony that complaint had been made by deceased against defendant some time before the homicide charging him with theft from the deceased, there was no error in the court's failure to limit this evidence to the purposes for which it was introduced, that is to show motive, etc., as the same could not have been used by the jury for any other purpose.

### 6.—Same—Evidence—Declarations of Defendant—Impeachment.

Upon trial of murder there was no error in admitting in evidence testimony that on the day of the homicide, and a short time thereafter, defendant made the statement that he shot and killed deceased and that at the time he shot him deceased was putting his hand in his shirt-bosom, and the court was not required to limit this evidence in his charge to the purposes of impeachment because defendant as a witness denied this statement.

### 7.—Same—Evidence—Declarations by Defendant—Threats—Impeachment.

Upon trial of murder there was no error in permitting the State to prove that the defendant had made the statement that deceased had been interfering with him and his teams, etc., and that he carried his gun for deceased on the previous day and he did not come, etc.; that he would have killed him if he had, and that the next time he bothered him in his work he would kill him, and there was no error in the court's failure to limit this testimony to

the purpose of impeachment, because defendant denied such statement on the stand.

**8.—Same—Evidence—Threat—Declarations by Defendant—Impeachment.**

Upon trial of murder, there was no error in permitting the State to show that the defendant declared some time before the homicide if deceased ever charged him with burning his smokehouse, he, defendant, would kill him; and there was no error in the court's failure to limit this evidence to purposes of impeachment because the defendant denied said statement.

**9.—Same—Rule Stated—Motive—Limiting Testimony.**

Where the State offers testimony against the defendant consisting of charges against defendant by deceased alleging crimes, and which evidence is offered for the purpose of showing motive and ill-will by the defendant against the deceased in the trial of defendant for murder as part of the State's affirmative and original proof of the guilt of the defendant, no limiting charge by the court is either required or proper to be given.

**10.—Same—Evidence—Undisclosed Motive of Deceased—Practice.**

Where upon appeal from a conviction of murder, it appeared from the record that the defendant on his trial did not object to the testimony of the widow of the deceased to the effect that the deceased was going to his farm, to fix a water gap on the morning of the homicide, on the ground that this contained an undisclosed motive of the deceased he could not raise the question for the first time in his motion for rehearing on appeal.

Appeal from the District Court of Shelby. Tried below before the Hon. James I. Perkins.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Dan Walker* and *Geo. S. King,* for appellant.—Upon question of admitting evidence showing that defendant's brother was convicted on testimony of the deceased in a felony case some time before the homicide without notice to defendant: Roquemore v. State, 50 Texas Crim. Rep., 542, 99 S. W. Rep., 547; O'Quinn v. State, 55 Texas Crim. Rep., 18, 115 S. W. Rep., 39; Sauls v. State, 30 Texas Crim. App., 496; Thompson v. State, id., 325; Chapman v. State, 45 Texas Crim. Rep., 479; Felder v. State, 23 Texas Crim. App., 477; Long v. State, 13 Texas Crim. App., 211; McCue v. State, 103 S. W. Rep., 883; Green v. State, 49 Texas Crim. Rep., 645, 98 S. W. Rep., 1059; Schweir .v. State, 50 Texas Crim. Rep., 119, 94 S. W. Rep., 1049.

· Upon the question of the court's failure to charge the converse of the proposition of provoking the difficulty: Young v. State, 41 Texas Crim. Rep., 442; Craiger v. State, 48 Texas Crim. Rep., 500; Hall v. State, 42 Texas Crim. Rep., 444, 60 S. W. Rep., 769; Pratt v. State, 53 Texas Crim. Rep., 281.

On the question of the court's failure to limit testimony to purposes of impeachment: Thornley v. State, 36 Texas Crim. Rep., 118; Hall v. State, 42 Texas Crim. Rep., 444, 60 S. W. Rep., 769; Harvey v. State, 57 Texas Crim. Rep., 5, 121 S. W. Rep., 501;

Collins v. State, 5 Texas Crim. App., 38; Taylor v. State, 22 Texas Crim. App., 529, 3 S. W. Rep., 753; Burks v. State, 24 Texas Crim. App., 326; Maines v. State, 23 Texas Crim. App., 568; Wheeler v. State, 23 Texas Crim. Rep., 598; Washington v. State, 23 Texas Crim. App., 336; Davidson v. State, 22 Texas Crim. App., 372; Morris v. State, 30 Texas Crim. App., 95; Willis v. State, 24 Texas Crim. App., 584; Winters v. State, 37 Texas Crim. Rep., 582; Winfrey v. State, 56 S. W. Rep., 919.

On the question of the court's failure to limit the testimony, with reference to declarations by the defendant and which were denied by him, to purposes of impeachment: Benjamin v. State, 57 Texas Crim. Rep., 291, 122 S. W. Rep., 542; Bennett v. State, 43 Texas Crim. Rep., 241; Banks. v. State, 56 Texas Crim. Rep., 262, 119 S. W. Rep., 847.

Upon question of undisclosed motive of deceased: Pratt v. State, 53 Texas Crim. Rep., 281; Adams v. State, 44 Texas Crim. Rep., 64; Johnson v. State, 22 Texas Crim. App., 206.

*John A. Mobley,* Assistant Attorney-General, and *D. M. Short & Sons,* for the State.

RAMSEY, JUDGE.—By indictment filed in the District Court of Shelby County on the 17th day of August, 1908, appellant was charged with the murder of one S. A. Fraser. This killing is charged to have been committed on the 15th day of June preceding. At a trial held in said court on the 14th day of September, 1909, appellant was by the jury found guilty of murder in the second degree and his punishment assessed at confinement in the penitentiary for a period of five years.

The statement of facts comprises something more than 100 pages of closely typewritten matter, and it would be impossible within the limit of any ordinary opinion to make a detailed statement of the case. It may be sufficient, however, to say that appellant and deceased lived within about a quarter of a mile of each other, and that their relations had not been friendly for some little time. Various threats were shown to have been uttered by deceased against appellant, and there was some evidence of threats by appellant to do harm to deceased. The record shows that a brother of appellant had been prosecuted for theft by deceased, or at least the deceased was a prominent actor in his prosecution and an important witness on his trial. It also shows that deceased had charged appellant with burning his smokehouse and that probably the deceased instigated a charge of theft of timber against appellant. The record also shows that some charge, about the same time, had been brought against deceased. Taking the whole record, it clearly shows that the relations between the parties were very strained. There is in the record considerable testimony that appellant was a man of good reputation as a quiet,

peaceable citizen. There is some evidence to the effect in substance that the reputation of deceased as a quiet and law abiding citizen was bad, though the State met this issue by testimony that his reputation in this respect was good. The evidence tends to show that for many years there was a roadway leading across appellant's land and that for some time before this in getting logs to the river appellant had been hauling across the land of deceased. To this deceased objected and had given notice, just before the killing, to appellant that this must stop. Out of these controversies grew the difficulty and in them rests the motive for the killing. When this killing took place there was no eyewitness except appellant. His evidence tends to show that on the morning in question he came upon deceased unexpectedly and upon an infrequently traveled road. Deceased was in his shirt sleeves, had a hammer in his hand and his coat thrown across his left arm. His testimony is that when he was ten, fifteen or twenty steps from the deceased, deceased put his hand towards his waist, and with a threatening statement made a demonstration as if to draw a pistol and that thereupon he shot deceased. Appellant was armed with a double-barreled shotgun, and the evidence shows that he fired into the body of deceased twenty-three different and distinct shot, or at least his body was pierced and bore evidence of having been struck by at least that many different bullets. When found, by the testimony of numerous witnesses it was shown, deceased was in his shirt sleeves and his coat was lying across his left arm, and by the testimony of most of the witnesses it was shown that it was folded with the lining on the outside; that it contained a pistol, and that this pistol was rather against the body of the deceased. This will probably be a sufficient statement of the case to make the opinion understood.

1. When the case was called for trial appellant filed a motion to quash the venire on two grounds. First, because it did not state the nature of the offense with which appellant was charged, nor that he was charged with a capital offense. Second, because the certificate of the clerk of the District Court to said writ was defective in that it is dated on the 10th day of September, 1909, which was nine days after the venire was by its terms made returnable. We think there is no merit, as presented, in either of these contentions. Article 642 of our Code of Criminal Procedure is to this effect: "A 'special venire' is a writ issued by order of the District Court, in a capital case, commanding the sheriff to summon such a number of persons, not less than thirty-six, as the court in its discretion may order, to appear before the court on a day named in the writ, from whom the jury for the trial of such case is to be selected." The statute by its terms does not require that this writ shall state that the case in which it is issued is a capital case, or that it shall state the nature of the offense, but only provides that such special venire shall be issued in a capital case. In this case the writ names

the case by style and number and the court in which it is pending and gives the day and date to which same is returnable. It has long been held in this State that statutes relating to this writ are, for the most part, directory and should be liberally construed. Roberts v. State, 30 Texas Crim. App., 291; Murray v. State, 21 Texas Texas Crim. App., 466; Pocket v. State, 5 Texas Crim. App., 552. There is no claim or contention that in fact the writ was not issued in the instant case, or that it was not a case in which under the law, a special venire was required to be issued. Nor do we think there is any merit in the bill of exceptions and contention that the writ should have been abated because it was dated on the 10th day of September, 1909. Under the direction of the court inquiry was made and it was discovered that as a matter of fact it was issued on the 10th day of August, 1909, and that the indorsement on the back of said special venire bears that date, and that the certificate of the clerk at the bottom of the venire bearing the date of September 10, 1909, was a clerical error. The writ by its terms was made returnable on September 1, 1909, and the jurors appeared on the 3d day of September of the same year under authority and by direction of the writ aforesaid. It seems too clear for discussion that this contention is without merit.

2. On the trial the State was permitted to introduce, over the objections of appellant, Mr. G. W. Gibson, official stenographer, who testified in substance that on the trial of appellant's brother at the February term, 1908, of the District Court of Shelby County, in which he was charged with theft of hogs and in which deceased was the principal State's witness, after the jury upon said trial had retired to consider of their verdict they came into open court and requested that the testimony of said witness Fraser be read to them by the stenographer, and that after the reading of the testimony of said witness the jury afterwards returned a verdict of conviction against appellant's brother assessing his punishment at two years confinement in the State penitentiary. This testimony was objected to for the reason that same was immaterial and irrelevant and because the defendant was not present at the time and did not hear the testimony that was reread and had never heard of its having been reread just prior to the verdict being returned against his brother. That it was competent under the facts of this case, as showing motive, for the State to prove the relation of the deceased to the case in question, his active participancy therein, there would seem to be no sort of doubt. It will be observed that no portion of the statement made by the deceased was admitted, but simply the fact was proven that his testimony was reread and that afterwards a conviction was had. This matter is not included in any regular bill of exceptions, but appears in the statement of facts where it is stated, as an objection, that it was not shown that this occurrence was had in the presence of the appellant or that he had ever heard of it.

The testimony of Mr. Gibson does not show, as a matter of fact, nor is it stated and found as true by the court that he was not present or did not know of the incident testified about, nor is it clear that appellant had not heard and did not know of this incident. We are inclined to think that the record raises the issue that he did know of it and that his relations to the case and his interest in his brother's behalf were such as to justify the jury in concluding that he must, in the nature of things, have known of this particular incident. It is shown on the cross-examination of the witness Harvey that the appellant was present at the trial of his brother. While he denies this, it does appear from his testimony that he was engaged for about two days after the conviction in seeking to obtain affidavits of various persons attacking the reputation of deceased for truth and veracity, which affidavits were intended for use in his brother's motion for new trial, which was then pending. It also appears by the testimony of the witness Roberts that appellant understood or believed that his brother had been convicted for hog theft largely, if not solely, upon the testimony of the deceased, it appearing further in this conversation that appellant said to Roberts on the Saturday evening before deceased was killed on Monday, that this testimony of deceased would not be forthcoming at the next trial of his brother.

3. Complaint is made of the charge of the court in that it is erroneous since it failed to charge the jury that appellant had the right to carry his gun with him in the bottom on the morning of the homicide, and that if the jury believed that he was seeking the deceased with his gun and met the deceased in the road, and at said meeting shot him, but did no act calculated to provoke a difficulty with deceased, and that deceased made a hostile demonstration towards him, that deceased was about to draw his pistol for the purpose of killing him or doing him some serious bodily injury, that then he would have a right to shoot in self-defense and the fact that he was carrying his gun and looking for the deceased, if the jury so believed would not, under these circumstances, abridge or lessen defendant's right of self-defense. In considering this complaint it should be stated that the court gave an excellent and full charge on the law of self-defense which is not, except in the respect above noted, complained of, except in the most general way. We do not think under the facts of this case that the court should have given this charge. The evidence of appellant was directly to the effect that at the time of the fatal difficulty he was not seeking deceased, and that he came upon him entirely unexpectedly. The court did not charge, on the issue of provoking the difficulty, or in any way limit appellant's rights of self-defense by reason of any such claim or contention. In the absence of a charge presenting the law of provoking the difficulty the court was not in error in not charging the jury in respect to these matters. An examination

of the authorities will disclose the fact that in practically all the cases instructions such as those mentioned in this assignment have only been given where the issue of provoking the difficulty was in the case.

4. During the trial it was developed that a complaint ·had some time before the killing been made against appellant charging him with the theft of timber from the deceased, and that in view of this evidence the court erred in failing to limit same to the purposes for which it was introduced. We think it would have been manifestly improper for the court to have limited this testimony. It was introduced, among other things, and was clearly admissible, for the purpose of showing animus, motive and resentment on the part of appellant and as furnishing a reason for his hate, dislike and ill-will. Sullivan v. State, 31 Texas Crim. Rep., 486. It is not necessary to limit evidence of extraneous crimes for the purpose of affecting defendant's credibility as a witness unless the evidence of such extraneous crimes might be used by the jury against him on the trial. In other words, if it is such evidence as in its nature could not be taken as a circumstance of guilt in the case being tried it is not error to fail to limit it in the charge. Thornley v. State, 36 Texas Crim. Rep., 118. While this testimony seems on the trial to have been treated somewhat in the nature of impeaching evidence it was nevertheless admissible, as it was doubtless admitted, to show motive. For the court to have singled out this testimony so admissible on the subject of motive would doubtless have been to have dignified. it with an importance that it did not possess and might have been subject to objection as a charge on the weight of the evidence. In the case of Rice v. State, 49 Texas Crim. Rep., 569, it was held that it was error to charge the jury that the State had introduced evidence which might tend to show the defendant and other parties acting with him influenced a State's witness to leave the State and not attend the trial and that the jury could only consider such testimony as a mere circumstance with other evidence, in determining whether defendant killed deceased, and if so, his motive in doing so, and that the jury could not consider it for any other purpose as they could not convict defendant for any offense other than that named in the indictment. This charge was held to be on the weight of the evidence and not authorized. Hall v. State, 31 Texas Crim. Rep., 565.

5. On the trial the State proved by Mrs. Perminter and her daughter, Dona Perminter, that on the day of the homicide and a short time thereafter they stopped at the home of appellant to get some water, and in conversation with them he made the statement that he shot and killed deceased, and that at the time he shot him deceased was putting his hand in his shirt bosom. The State was also permitted to prove by one Cox that on the road from his house to Logansport appellant made the statement to him that deceased had been interfering with him and his teams where he was hauling

and that he had carried his gun for him on the previous day and he didn't come, and that it was a good thing he didn't come, if he had he would have been killed, and that the next time he bothered him over there in his work he would kill him. The State was also permitted to prove by one Williams that appellant told him in speaking of deceased having his smokehouse burned, that if he ever told him to his face that he burned his smokehouse he would kill him. It was further shown in evidence that appellant was asked, touching the statements, and denied making them, or any of them as attributed to him by the witnesses. It is urged that since this evidence was in direct contradiction and in impeachment of the testimony of appellant while a witness in his own behalf, that the court should, in his charge, have limited the testimony of these witnesses to the purpose for which it was offered. Under this assignment they submit this proposition: "When a defendant goes upon the stand as a witness in his own behalf he becomes subject to the rules as any other witness, and when predicates are laid for the purpose of his impeachment, and testimony introduced for that purpose, it is the duty of the court in his charge to the jury to limit such testimony for the only purposes for which it was admitted." That the testimony of Williams and Cox was admissible as direct testimony there can not be the slightest doubt. They both imply threats to kill and as well imply the most deadly animosity and, as showing motive, were undoubtedly admissible as original testimony. We think, further, on a fair analysis of the evidence that the testimony of Mrs. Perminter and her daughter was equally admissible as original testimony. When the body of deceased was examined no pistol was found on him except one in his coat pocket, and the location of this was so distinctly away from his bosom as to show the substantial untruth of appellant's statement to these ladies. It should be remembered, too, that these statements to Mrs. Perminter and her daughter were made immediately after the killing and before an examination of the body had been made by other persons. Hence, their testimony was the evidence of appellant himself about the facts immediately surrounding the killing, though incidentally an impeachment and contradiction of appellant's testimony, and was admissible as original testimony. As stated, that the testimony of Cox and Williams implying and involving a threat by appellant against the deceased and as showing ill-will and animosity was legitimate and affirmative testimony for purposes other than impeachment, is sound in reason and supported by an abundance of authority. Leeper v. State, 29 Texas Crim. App., 63, and Hudson v. State, 28 Texas Crim. App., 323. The mere fact that the testimony was, in a sense, impeaching, or that it was offered by counsel in the belief that it was impeaching in its character can not affect its admissibility if in fact and law it were admissible in the first instance. It was incidentally impeaching and it would have been manifestly erroneous for the court to have

denied the State the use of this evidence as testimony of guilt and to have limited it solely for the purpose of contradiction.

A careful review of the entire record has convinced us that there is no error for which the case should be reversed, and it is therefore ordered that the judgment of conviction be and the same is hereby in all things affirmed.

*Affirmed.*

### ON REHEARING.

#### December 21, 1910.

RAMSEY, Judge.—The motion for rehearing filed in this cause on behalf of appellant concedes that the court correctly determined several questions originally relied on for a reversal. Serious disagreement, however, with our conclusions on other matters contained in the opinion and arising on the record is strongly urged. These several matters are so skillfully presented and are urged with so much earnestness and vigor that we have felt it our duty to review and discuss them.

1. The first ground of the motion for rehearing is as follows: "The court erred, in the opinion of affirmance, in holding that it was not error for the trial court to admit the testimony of G. W. Gibson, official stenographer, to the effect that the jury upon the trial of appellant's brother returned a verdict of guilty after he had reread, at their request, the testimony of deceased given upon that trial, and in holding that appellant must have had knowledge of such transaction, in the nature of things, the evidence showing, and the agreement of the parties establishing, that appellant knew nothing of this transaction."

A careful review of the record has more firmly convinced us that the disposition and treatment of this question in the original opinion was and is correct. The bill of exceptions evidencing this matter seems clearly defective in not showing as a fact that appellant was unaware that deceased was a witness against his brother, of the importance of his testimony, and of the particular incident of his testimony having been read to the jury by the stenographer. The mere statement and denial of such knowledge in the bill of exceptions is not equivalent to a finding that the matters stated as grounds of objection are in fact true. If we look to the evidence it seems clearly true that there was abundant testimony from which the jury might have reasonably found that he had such knowledge, and it seems clear to us, in the light of the entire record, that no fair mind, having in mind the entire case, could have doubted for one moment that he did have this information. One witness speaks of appellant being present at the trial. It was shown overwhelmingly by the evidence that after his brother's conviction he actively engaged in an effort to secure affidavits impeaching the reputation of deceased for truth and veracity, and had stated to a witness with deep significance that

this testimony of Fraser's would not again appear in judgment against his brother. All this is consistent with the idea that he must have known and did know of deceased's testimony, its importance, the extent to which it figured in his brother's case, and all the incidents of the trial. If it does not show it directly, it is certainly strong circumstantial evidence of the fact, and such fact of notice in this as in other cases may be as truly and convincingly shown by circumstances as by direct evidence. It should further be remembered that no part of deceased's testimony on the trial of the brother of appellant was admitted in this case, but merely that the testimony given on such trial was thereafter reproduced by the stenographer.

2. The second ground of the motion is as follows:

"The court erred, in the opinion of affirmance, in holding that no error was committed upon the trial of the cause, because of the failure of the trial court to affirmatively charge the jury as set forth in appellant's seventh exception in his motion for a new trial, to the effect that appellant had the right to carry his gun with him on the morning of the homicide, and that if the jury believed he was seeking deceased with his gun when they met in the road, but that he did no act at the time calculated to provoke, or to bring on the difficulty with deceased, and that deceased made a hostile demonstration as if to draw a pistol, or of doing him some serious bodily harm, that appellant would have the right to shoot and kill deceased, and the fact that appellant had his gun would not abridge or lessen his right of self-defense."

This matter was fully considered on original submission and seems to us to have been conclusively answered and correctly disposed of in the original opinion. In the pending motion the point is sought to be strengthened by combining with it a discussion of the fact that the court permitted proof of the innocent purpose of deceased in being on the road at the time he met his death. This suggestion and view is presented for the first time in this motion. It can not now be urged. The issue of self-defense was well presented, and except in the respect herein urged was not complained of in the court below. There was no submission of the issue of provoking a difficulty. Where the court submits the issue of self-defense generally in the terms of the law, it is not only not required, but it would be manifestly improper to select detached and isolated parts of the evidence and single them out for particular and special instructions, either at the instance of the State or the defendant.

3. The third ground of the motion is thus stated:

"The court erred, in its opinion of affirmance, in holding that under the circumstances it did not devolve upon the trial court to limit, to the only purpose for which it was introduced, the testimony given by defendant, over objection of his counsel, to the effect that he had been indicted by deceased for theft of timber."

This testimony was admitted and was clearly admissible on the ground, considered in connection with other evidence, that it showed malice and ill-will on part of appellant towards deceased. If in fact he was not guilty of the theft of timber, as had been charged by deceased, his wrath and anger would have been perfectly natural. If he had been guilty then of such charge and exposure, he no doubt would have entertained towards Fraser the same ill-will. This was testimony of the highest value to the State to prove hatred, ill-will and motive. Again, it must be remembered that it was not a· case where *evidence* or *proof* of extraneous crimes had been admitted. The testimony in this case went only to the extent that deceased had made such a *charge* against appellant, but what the facts were in respect to same the record is wholly silent. The testimony stopped with the fact of the charge. There was no danger, therefore, that appellant would, under an indictment for murder, be convicted, in the absence of any proof sustaining it, on a charge of theft. Nor in such condition of the record is it reasonable or fair to assume that the evidence could or would have been appropriated by the jury for any purpose except the single one of showing animus or motive. There is perhaps no question which is in more confusion in our decisions than the one involved in the proposition as to when the court is required to give a charge limiting testimony as to other offenses, or as to proof of charges of other offenses. In most of the cases in the reports, and in nearly all of the cases cited in support of the motion, it appeared that there was *evidence* of the *commission* of other offenses. However the rule may be generally, we think this statement is sound law. Where, as in this case, charges against a defendant by a deceased, similar to the one here in evidence, are offered as supplying and furnishing motive, and as part of the State's affirmative and original or primary proof of guilt, no limiting charge is either required or proper to be given. This rule is not only sound in legal reason, but is directly supported by the decisions referred to in the original opinion. In the case of Thornley v. State, 36 Texas Crim. Rep., 118, Judge Hurt, in passing on the motion for rehearing, uses this language: "But where the testimony is simply used to prove up the case as res gestae, or to prove any other fact that forms a part and parcel of the case, so as to show the defendant's guilt, and there is no probability of the jury convicting for the offense not charged, it is not necessary to limit the effect of the testimony. In fact, it is only necessary for the court to charge upon and limit said testimony when there is danger of a conviction for the offense not charged, or of an unwarranted use of the testimony to the prejudice of the defendant in the case in which he is being tried." In the case of Hall v. State, 31 Texas Crim. Rep., 565, Judge Davidson, speaking for the court, says: "The court did not err in failing to charge upon the effect of this evidence, and in omitting to restrict it as a fact tending to prove motive or · malice. The

authorities cited by appellant sustain the proposition that when independent, contemporaneous crimes, or crimes showing system, are adduced and relied on to connect the accused with the offense on trial, or to develop res gestae, or to show intent, they should be restricted to their proper office by appropriate instructions. The rule grows out of the necessity of protecting the accused against conviction of an offense not charged in the indictment, and to guard him from prejudice that might occur on account of such crimes being admitted as evidence  But the evidence under discussion is a part and parcel of this case, belongs to and grows out of it, is not an independent offense, and does not come within the rule invoked by defendant." To the same effect see Weaver v. State, 46 Texas Crim. Rep., 607.

4. The next ground of the motion is to this effect:

"The court erred, in its opinion of affirmance, in holding that the testimony of Mrs. Perminter and her daughter, Dona, to the effect that appellant stated to them shortly after the homicide that he shot and killed deceased, and that at the time he shot him he had his hand in his shirt bosom, was original, and not impeaching, testimony, such as required the trial court to limit the same in its charge to the jury to the only purpose for which it was admissible, and in holding that the trial court did not err in failing to limit the effect of such testimony."

There is no merit in this contention. It is admitted in the motion that there was no error in admitting in evidence the statement of appellant that he had killed Fraser. That, it is conceded, was original evidence proving the homicide. Again, since appellant on the stand admitted the killing, in any event it could have worked no injury. The complaint is that since the statements of Mrs. Perminter and her daughter proved an admission of the killing, under circumstances denied by him, that it was, therefore, necessarily impeaching, and must at all hazards be limited. This is not necessarily true, even if the testimony was wholly impeaching in character, where it relates to the very case being tried, and where in such case the fact of the killing is admitted. In fact, the evidence is original testimony which not only includes and contains an admission of the killing, but is an explanation which, under the evidence, is inconsistent with the facts as disclosed by an examination of Frazer's body, and the clothing and weapon carried by him, and one which carries on its face and which any jury might well believe to be a fabrication designed to shield himself from the consequences of his wrongdoing, and, therefore, original evidence and strong evidence of his guilt.

5. Finally, it is urged that the court committed error in permitting the State, over the objections of appellant, upon the trial of the case, to prove by its witness, Mrs. S. A. Fraser Connell, the

surviving wife of deceased, the undisclosed innocent purpose of deceased in going to his farm on the morning of the homicide. This matter was not presented in the original brief, is not mentioned in appellant's motion for new trial, nor was it contained in the lengthy motion for rehearing originally filed, and was not referred to in the opinion. A careful examination of the record discloses that there is no bill of exceptions proper in same evidencing this matter. We find by referring to Mrs. Connell's testimony, as contained in the statement of facts, the following reference to this matter which, to insure accuracy, is here faithfully copied:

"I remember about my husband being killed. It was about six o'clock, I suppose, that morning when my husband left home; when he left that morning he went to fix a water gap and carried a hammer with him.

"Q. What time was he to return, if he had any understanding with you as to when he would return? Defendant: That seems to be immaterial and we object to it. Court: I don't think it is objectionable, the objection is overruled. Defendant: We except to the ruling of the court. A. Why, he told me he didn't know; it might be after dark when he got in, if he lacked an hour's or so work getting through he would get through before he come back rather than go back the next day."

It will thus be seen that there was no objection at all interposed to the proof to the effect that her husband left home about six o'clock in the morning, and that when he left he went to fix a water gap and carried a hammer with him. The only portion of the testimony objected to was that relating to the time of his return, and to this evidence the only objection was that it seemed to be immaterial, which, as applied to this character of testimony, was no objection at all. As presented, we are not authorized to review this contention, but in the condition of the record must hold it wholly without merit.

A careful review of the record has convinced us that the original opinion was correct; that appellant has been convicted on a fair trial, and that his sentence is warranted both by the law and the facts. It is therefore ordered that the motion for rehearing be and the same is hereby overruled.

*Overruled.*

McCord, Judge, absent.