### MARTIN BROWN v. THE STATE.

#### No. 1357. Decided January 31, 1912.

#### Rehearing denied March 6, 1912.

**1.—Murder—Evidence—Husband and Wife—Cross-Examination—Bill of Exceptions.**

Where, upon trial of murder, the court confined State's counsel, in his cross-examination of defendant's wife, to matters brought out on direct examination, and the bill of exceptions did not show what her testimony was on

direct examination, the same could not be considered on appeal; besides, it must be assumed that the trial court, in the light of his action, ruled correctly.

### 2.—Same—Bill of Exceptions—Motion for New Trial.

Where the motion for new trial contained several grounds of alleged error, a bill of exceptions to the overruling of the motion generally can not be considered on appeal.

### 3.—Same—Continuance—Practice on Appeal.

Where no bill of exceptions was taken to the overruling of the application for continuance, there was nothing to review; besides, no such motion appeared in the record.

### 4.—Same—Charge of Court—Manslaughter.

Where, upon trial of murder, it was questionable whether manslaughter was in the case, but the court, nevertheless, submitted a charge thereon, as well as on the different degrees of murder, and also self-defense, there was no error.

### 5.—Same—Charge of Court—Right of Going Armed—Explanation—Article 723.

Where, upon trial of murder, the evidence did not raise the issue of defendant's right to arm himself and call upon deceased for an explanation of his conduct, there was no error under article 723, Code Criminal Procedure, in the court's failure to charge thereon.

Appeal from the District Court of Cherokee. Tried below before the Hon. James I. Perkins.

Appeal from a conviction of murder in the second degree; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*B. B. Perkins & Jas. I. Perkins, Jr.,* for appellant.—On question of cross-examination of defendant's wife: Thompson v. State, 9 Texas Crim. App., 649; Jones v. State, 51 Texas Crim. Rep., 472; Steward v. State, 52 Texas Crim. Rep., 273; Richards v. State, 53 Texas Crim. Rep., 400.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—The appellant was indicted for the murder of Will Findley, his father-in-law, on November 4, 1910, tried and convicted by the jury of murder in the second degree and his penalty fixed at ten years in the penitentiary.

The evidence, in effect, and without contradiction establishes that the appellant was the son-in-law of the deceased; the wife of appellant being the daughter of deceased. That at the time and for some time prior thereto all the parties had been living together in the same house. The house consisted of two sixteen feet rooms adjoining, with merely a partition between them, a seven foot gallery in front with a door entering each room from the gallery; that back of the room where deceased, his wife and some of his children slept was another room and kitchen and dining room; that in going from the front gallery back to the dining room it was necessary to pass through the bedroom of the deceased. The deceased kept his gun in a rack on the partition wall between the

two rooms. Appellant knew this. Appellant also had a gun which he kept in his room. The deceased and the appellant are shown to have been on friendly terms with no trouble between them prior to the killing. They had worked together at a cane mill a few miles from their home the day of the killing. The killing occurred just about, or just prior to dark on the evening of November 4, 1910. The appellant and the deceased did not come from the cane mill together. It seems that for some reason—in no way connected with the killing or anything causing it—that some matter took deceased to another place so that they did not return home together.

In the evening of November 4, in the absence of both the appellant and the deceased, the appellant's wife and her mother, the wife of the deceased, had some fuss, the appellant's wife claiming that her mother "throwed my things out." Her mother denied this. At any rate, appellant's wife claims to have told him this when he came home that evening. The deceased was not present at this or any other time, and is not shown to have known or heard anything about this claimed trouble between the appellant's wife and her mother, the deceased's wife.

When appellant's wife told him this, which was at the house occupied by all of them, he took his gun and went off to his brother-in-law's some distance. He afterwards came back and sat on the back gallery of the home for awhile. The deceased came home shortly before the killing and lay down on the edge of the front gallery with his head at one of the posts thereof. The deceased's wife was sitting on the front gallery; the appellant's wife sat in the door of her room right at the gallery. A thirteen year old son of the deceased sat on the edge of the gallery close to the post where the deceased was lying. There were some two other children also on the gallery; some two others of the deceased's children were in the kitchen preparing the supper.

Just before the killing the appellant went from the back gallery where he was sitting, around the house with his gun. All of the witnesses who testified swore that they did not see appellant at the time with the gun until immediately before appellant shot the deceased. The testimony tends to show that he so carried the gun when he came around the house that it could not be seen and was not seen by any of the parties until he presented it and shot. There is no dispute in any material way as to what occurred between the appellant and the deceased from the time the appellant went around the house and first spoke to the deceased. He went up to within two or three feet of where the deceased was lying. While deceased was thus lying on the gallery and when the appellant got within two or three feet of him and stopped, appellant, in substance, said: "Will, you have always treated me like a man, have you not?" Deceased replied, "Yes, and you have treated me like a man so far." Appellant said: "I am tired of taking your wife's foolishness" or "I have taken as much of your wife's dog gone foolishness as I am going to." Deceased replied, "Oh, pshaw! I will take her part." Four or five of the witnesses then present testified

that just at this moment one of the deceased's girls who had been preparing the supper came from the kitchen to the door entering upon the gallery, and announced to the deceased that his supper was ready and that he at once turned over, got up and started in the room, they all assuming that he was going to his supper as he had to go this way to get to the dining room; but the appellant's wife testified that just at this point her father jumped up and ran in the house, she, apparently, and the appellant also apparently, acting upon the assumption that he was going in to get his gun. She also testified she did not hear supper announced. At any rate, all of the parties, without dispute, show that just as he got into the door of the room the appellant shot him in the back of the left side of his face, striking him on the back of the left jaw; that he immediately fell just in the door, got on his hands and knees, struggled around, and thus came back out on the gallery and into the yard. From this shot he died a few hours later.

Appellant has but two bills of exceptions in the record. One is to the action of the court in permitting the State's attorney on cross-examination of the appellant's wife, who was introduced and testified for him, to have her testify to this: "He (appellant) took his gun and went away. He said he was going to Napoleon's (his brother-in-law's) ; came back and had his gun when he came back. When he left to go to Napoleon's he had his gun with him." The objection to this testimony was, in effect, that it was permitting the State, on cross-examination of the appellant's wife, to ask questions on a matter that had not been brought out by the appellant on his direct examination. The bill apparently gives all of the cross-examination by the State of this witness. To take the cross-examination it shows in substance that the holding of the court was that the State could not cross the witness on anything that was not brought out by the appellant on his direct examination of this witness. The bill does not show what her testimony was or any of it on direct examination. If we could look to the whole record on this subject, it would probably show this. At any rate as the matter is presented, we must assume that the court ruled correctly and that no reversible error is presented.

The other bill is merely to the overruling of the appellant's motion for new trial. The motion for new trial has several grounds and as this bill is presented it can not be considered.

One ground of the motion for new trial is a complaint that the court erred in overruling appellant's motion for continuance. No such motion is shown in the record, no bill of exceptions was taken to the action of the court thereon, and hence this matter can not be considered.

Another ground in the motion for new trial is a complaint that the court erred in charging the jury at all on murder in the first and second degrees and in permitting a conviction for murder in the second degree for the reason, he claims, that under the evidence appellant could only have been convicted for manslaughter.

Another ground in the motion complains that the evidence is insuf-

ficient to sustain a conviction for anything other than manslaughter. There is nothing in either of these complaints. It is very questionable from the testimony whether manslaughter was in the case, but the court in his charge, submitted murder in the first and second degrees, self-defense and manslaughter. No complaint whatever is made in the motion for new trial or otherwise of the court's charge on any of these matters, except as stated above, and another ground, stated in the motion for new trial, that the court omitted in his charge on manslaughter to tell the jury that the appellant had the right to arm himself and go to the deceased and talk to him in an effort to settle the trouble between their wives.

The evidence in no way raises the question that the deceased had anything whatever to do with the fuss that evening, or any other time between his and the appellant's wife. He had neither done nor said anything about it prior to what occurred immediately at the time of the killing. The appellant requested no charge on the subject. We believe from the testimony that no charge on the subject was called for by the testimony. Even without the provisions of Article 743 (new) Code Criminal Procedure and 723 (old), there was no reversible error in not submitting such question to the jury and with that article no material injury whatever is shown to appellant by not submitting that question.

There is no other matter presented requiring any further discussion. There being no reversible error, the judgment will be affirmed.

*Affirmed.*

[Rehearing denied March 6, 1912.—Reporter.]