Audrey SHEPPARD, Appellant,

v.

The STATE of Texas, Appellee.

No. 52481.

Court of Criminal Appeals of Texas.

Jan. 19, 1977.

Rehearing Denied Feb. 9, 1977.

Calvin W. Wesch, Kermit, Robert Trenchard, Jr., Odessa, for appellant.

James A. Mashburn, Dist. Atty., Jack K. (Rusty) Wall, Asst. Dist. Atty., Midland, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

BILL J. CORNELIUS, Commissioner.

Appellant was charged with first degree murder in the shooting of her husband, Delmir Sheppard. The jury found her guilty of the lesser included offense of voluntary manslaughter and assessed punishment at twenty (20) years' confinement.

According to the State's evidence, officers of the Midland Police Department received a call to come to a mobile home occupied by Mr. and Mrs. Sheppard. When the officers arrived they found appellant, her two small children and her husband who had died from several bullet wounds in his head. They also found a pistol which was identified as the one used to shoot the deceased. At first appellant stated that someone had entered their trailer and shot her husband, but she later admitted to the officers that she had shot him.

Appellant contended that she acted in self-defense. She produced evidence of numerous previous beatings of her by the deceased during or after his drinking sprees. She testified that on the day of the killing her husband went to town about 5:30 in the afternoon to look for a pipe trailer. About 7:15 that evening, the deceased returned with a half-pint of scotch and instructed appellant to mix him a drink. Between that time and about 9:00 in the evening, appellant and the deceased watched television while drinking the half-pint of scotch. The deceased then suggested that they go for a ride. Appellant got the two children ready and all of them got into their station wagon and drove to town. They went to a 7–11 store, picked up a six-pack of beer and drove around while drinking the beer. Later they returned to the same 7–11 store and bought another six-pack of beer. On the way home they stopped at two different bars where they continued to consume alcoholic beverages. By this time it was late in the evening. When they finally left to go home, an argument ensued during which the deceased threatened appellant. Upon arriving home, appellant put the two children to bed and prepared a leftover dinner for her husband. While he was eating dinner, he kicked her several times. When he finished he suggested that they go to bed and that everything would be alright. He laid down on the bed in his shorts and t-shirt but the argument commenced again. As appellant sat down on the bed, the deceased started hitting and kicking her again and threatened to "kick her head in." He continued to threaten appellant and indicated that if "he didn't do it now he would do it sometime in the future." At this point, appellant got up from the bed, got the deceased's loaded .22 caliber pistol from the top of the chest of drawers approximately six feet from where she was sitting and then walked back to the bed. As she reached the bed, the deceased started to come up out of the bed at her. Appellant testified that she then commenced shooting at the deceased. The evidence showed that as many as nine shots were fired with as many as six to eight bullets hitting the deceased in the head.

To rebut appellant's self-defense theory, the State produced medical witnesses who testified that the deceased had an alcohol

level of .74 in his blood,[1] and that with such an amount he must have been unconscious from alcohol at the time of his death and could not have attacked or threatened the appellant.

Appellant relies upon four grounds of error for reversal. The first contends that the court erred in refusing to grant a mistrial when the prosecutor, in violation of a motion in limine, questioned appellant about a prior marriage of hers. During cross-examination the following exchange took place:

"Q (By Mr. Mashburn): All right, I'll start back in 1967, I think on my notes is when you met Mr. Sheppard, is that correct?

"A Yes.

"Q Were you married at that time?

"A Yes, I was.

"Q Who were you married to?

"A An Indian from North Dakota.

"Q What was his name?

"A Meredith Baker.

"MR. TRENCHARD: Your Honor, I am going to object to this. We have a motion in limine as to prior marriage, and the Court has sustained that motion in limine. And I will ask the Judge to instruct the Jury not to regard the last questions and answers for any purpose whatsoever."

Proof of prior marriages and divorces is not admissible unless such evidence tends to solve some disputed issue in the case. *Boyde v. State,* 513 S.W.2d 588 (Tex.Cr. App.1974); *Hatke v. State,* 455 S.W.2d 310 (Tex.Cr.App.1970). But an error in asking an improper question or in admitting improper testimony may generally be cured or rendered harmless by its withdrawal and an instruction to disregard the same. Except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of

withdrawing the impression produced on their minds, such an error will not call for a reversal of the judgment. *Mistrot v. State,* 471 S.W.2d 831 (Tex.Cr.App.1971); *White v. State,* 444 S.W.2d 921 (Tex.Cr.App.1969). In this case appellant's objection to the question was sustained and the court instructed the jury not to consider the question or answer for any purpose. Considering the record here, we do not find the error to be of such a prejudicial nature as to require reversal despite the instruction. Ground of error No. 1 is overruled.

Ground of error No. 2 complains of a remark by the prosecutor while he was stating an objection. During the direct examination of the witness Mrs. Shrupp, she testified that the deceased was violent at times and that she was afraid of him. At that time the prosecutor objected and made the following comment:

"MR. MASHBURN: May it please the Court—excuse me, Counsel. We have no objections to going in with the ruling of the Court pertaining to this. This witness is testifying to events that occurred five years prior to the time we are now in trial, and three years prior to this. And we object. It shows no relevancy. The State is not allowed to go into specific acts of bad conduct concerning—"

The objection was overruled. It is contended that by the above comment the impression was given to the jury that appellant had a history of bad conduct which the State was precluded from exploring. The comment should not have been made, but in view of the fact that appellant was not on the stand at the time, the prosecutor's comment was not completed, and considering the overall record, we conclude that appellant was not harmed.

In grounds of error 3 and 4 appellant contends that the court erred in refusing her special requested instructions relating to self-defense. She requested

---

1. Dr. Martha Madsen testified the .74 grams percent of alcohol was extremely high and she had not seen a case where the blood alcohol was that high previously. She related that her later research revealed cases in New York City where alcohol levels ranged from .7 to 1.0 where the individuals were still alive. She indicated that prior to the time of this case she thought the highest percentage of blood alcohol before a person's death would be .35 to .40.

charges on (1) her right to strike first and (2) the right to arm herself. The charge on self-defense which was given by the court was as follows:

"Upon the law of self defense you are instructed that a person is justified in using force against another when and to the degree she reasonable (sic) believes the force is immediately necessary to protect herself against the other's use or attempted use of unlawful force.

The use of force against another is not justified in response to verbal provocation alone.

A person is justified in using deadly force against another:

(1) if she would be justified in using force against the other; and

(2) if a reasonable person in the defendant's situation would not have retreated; and

(3) when and to the degree she reasonably believes the deadly force is immediately necessary:

(a) to protect herself against the other's use or attempted use of unlawful deadly force.

. . . . .

Now if you find from the evidence beyond a reasonable doubt that the defendant, Audrey Sheppard, did kill the said Delmir Morris Sheppard by shooting him with a gun as alleged, but you further find from the evidence that, viewed from the standpoint of the defendant at the time, from the words or conduct, or both, of Delmir Morris Sheppard, it reasonably appeared to her that her life or person was in danger and there was created in her mind a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force at the hands of Delmir Morris Sheppard, and that acting under such apprehension and reasonable belief that the use of deadly force on her part was immediately necessary to protect herself against Delmir Morris Sheppard's use or attempted use of unlawful deadly force, she shot the said Delmir Morris Sheppard, and that a reasonable person in defendant's situa-

tion would not have retreated, then you should give the defendant the benefit of that doubt and say by your verdict 'Not Guilty.'

If you find from the evidence beyond a reasonable doubt that at the time and place in question the defendant did not reasonably believe that she was in danger of death or serious bodily injury, or that a reasonable person in defendant's situation at the time and place in question would have retreated before using deadly force against Delmir Morris Sheppard, or that defendant, under the circumstances as viewed by her, did not reasonably believe that the degree of force actually used by her was immediately necessary to protect herself against Delmir Morris Sheppard's use or attempted use of unlawful deadly force, then you should find against the defendant on the issue of self defense."

The appellant requested the following special charge:

"You are instructed that if Delmir Sheppard was in the act of inflicting serious injury on the Defendant by some act on his part then done, the Defendant was not required to wait until the injury was actually inflicted, but she would have the right to strike before she received the violence, if any."

The requested charge on the right to strike first was unnecessary because the charge as given, particularly that portion relating to appellant's reasonable belief that deadly force was *immediately necessary* to protect herself, adequately preserved her rights in that regard. When the charge refused is substantially the same as or is adequately covered by the charge given, no harm is shown. *Aranda v. State,* 506 S.W.2d 221 (Tex.Crim.App.1974); *Estrada v. State,* 479 S.W.2d 316 (Tex.Crim.App.1972).

 Appellant's requested charge on the right to arm herself was as follows:

"You are instructed further in connection with the law of self-defense that if you find from the evidence that shortly prior to the killing the Defendant reasonably apprehended an attack upon her per-

son by the deceased, then the fact that the Defendant armed herself with a gun would in no wise impair or lessen her right of self-defense because she would have a right to so arm herself if she reasonably feared such an attack."

When an unlimited charge on self-defense is given, a charge on the right of the accused to arm himself is not required. *Williams v. State,* 162 Tex.Cr.R. 403, 285 S.W.2d 723 (1955); *Pierson v. State,* 160 Tex.Cr.R. 567, 272 S.W.2d 901 (1954); *Green v. State,* 155 Tex.Cr.R. 441, 236 S.W.2d 139 (1951). But as stated in many decisions of this Court, if the charge on self-defense is limited by "a charge on provoking the difficulty *or otherwise*", a charge on the accused's right to arm himself should be given. See *Young v. State,* 530 S.W.2d 120 (Tex.Crim.App.1975) and cases there cited. The trial court here did not charge on provoking the difficulty, but appellant contends that because the charge contains the new Penal Code's modifications of the right of self-defense relating to retreat and the use of deadly force, the charge was a limited one, and that the instruction on the right to arm should have been given. We do not agree. The court's charge on self-defense was not limited in its general language. It was as full and broad a charge as is permitted by the present law of self-defense. Neither was it limited in its application of the law to the specific facts. Appellant's theory of self-defense, so far as it was raised by the evidence, was presented without limitation. In essence the charge, both generally and as to the elements of *retreat* and *deadly force,* held appellant to a standard of reasonable conduct based upon her reasonable fear of death or serious bodily injury, viewed from her standpoint at the time. That includes her reasonable belief, under the circumstances, that it was necessary to secure the pistol and to use its deadly force to protect herself.

The rule requiring a charge on the right to arm grew out of cases where the accused *sought out the victim* for the purpose of correcting a wrong or demanding an explanation. In such a case, the charge on self-defense is usually limited by a charge on

provoking the difficulty, because the accused is the *initiator* of the confrontation. In that situation, however, the accused is still entitled to that limited right of self-defense even though he brought a weapon to the confrontation, and the jury should be so instructed. But in the absence of such a factual situation, we do not believe a charge on the right to arm is required merely because the charge instructs on deadly force and the obligation to retreat. The reason for the special charge is not present in such a case. See *Yancy v. State,* 108 Tex.Cr.R. 39, 298 S.W. 908 (1927); *Byler v. State,* 106 Tex.Cr.R. 570, 294 S.W. 205 (1926); *Minor v. State,* 105 Tex.Cr.R. 189, 287 S.W. 256 (1926); *Strickland v. State,* 71 Tex.Cr.R. 582, 161 S.W. 110 (1913); *Brown v. State,* 65 Tex.Cr.R. 121, 144 S.W. 265 (1912); *Duke v. State,* 61 Tex.Cr.R. 19, 133 S.W. 432 (1911); *Harrelson v. State,* 60 Tex.Cr.R. 534, 132 S.W. 783 (1910). We therefore hold that, in the absence of a charge on provoking the difficulty, the inclusion in the charge of an instruction on the law of retreat and the use of deadly force is not such a limitation of the right of self-defense as requires the giving of a special charge on the right to arm. Grounds of error No. 3 and No. 4 are overruled.

The judgment of the trial court is affirmed.

Opinion approved by the Court.