TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00347-CR







Charlie Dean Hays, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT


NO. 7559, HONORABLE CLAYTON E. EVANS, JUDGE PRESIDING







 A jury found Charlie Dean Hays intentionally and knowingly caused Emily
Shannon's death, rejecting his contention that he acted from sudden passion arising from an
adequate cause. (1) The trial-court judgment convicts Hays accordingly and sentences him to
ninety-nine years imprisonment as assessed by the jury. Hays appeals. We will affirm the trial-court judgment.



THE CONTROVERSY


 Hays testified that he and Shannon drove to his parents' home in the evening. 
Seeing a skunk in the front yard, he obtained a firearm from inside the house. The skunk
disappeared. He and Shannon talked about their estrangement. He asked Shannon to spend the
night with him. She refused, stating she was going elsewhere to "sleep with John." Hays testified
the two began to argue. He "blacked out" and could remember nothing after that. Bullets
recovered from Shannon's body and spent casings recovered at the scene matched the firearm that
lay at Hays's feet when investigators arrived at his parents' home.

 Undisputed evidence showed that Shannon received two gunshot wounds. The first
resulted from a firearm that discharged while the muzzle was in contact with her chin. The wound
was not fatal. The second and fatal wound was to the back of Shannon's head, fired at point-blank
range. The physical evidence suggested that Shannon was shot first on the front porch, that she
moved to the side of the house near a window, and that she was followed while her assailant
reloaded the single-shot firearm and released the automatic safety, and then placed the muzzle at
the back of Shannon's head and fired. Hays's brother testified without contradiction that he saw
Hays shoot Shannon in the back of the head near the window; that Hays entered the residence,
appeared dazed, and explained his actions by saying "So. I just don't give a f--- anymore." Hays
went to his room, placed the muzzle of the firearm in his mouth, and fired. He recovered from
his wound after being in a coma for a number of weeks. 



INADMISSIBLE EVIDENCE


 Over Hays's objection that the evidence was hearsay, the trial judge admitted in
evidence the testimony of four witnesses relating what Shannon told them before Hays killed her,
namely:



(1) Hays "had been calling [Shannon] and he would call her and then say ugly
things to her--that she was a slut--and then the next minute he would call back
and say `I love you, let's get back together.' that sort of things."


(2) Hays said "if he couldn't have [Shannon], no one else would."


(3) Hays "had grabbed [Shannon] by the throat" and slapped and tried to choke her
after entering her home one night.


(4) Shannon said "she did not know what to do about [Hays], that she wanted to
be friends with him."


(5) Shannon and Hays "had been at a party and they had been in a fight and he had
pushed her down."


(6) Hays had pushed Shannon "down in front of her friends" and "called her a
whore," and Shannon had showed the witness a resulting bruise on her leg.


(7) Hays was asking Shannon to return gifts, money, and other items that he had
given her.


(8) Hays was calling Shannon at "her job and saying she was a whore [and] a
slut."



 In Hays's first point of error, he contends admitting the foregoing hearsay was
reversible error. The State replies that the testimony was admissible to show Shannon's then-existing "state of mind," an exception to the hearsay rule. See Tex. R. Crim. Evid. 803(3). We
believe item four falls within the exception and therefore admitting that evidence was not error. 
We believe admitting the remaining items was error, however, because they do not amount to
statements pertaining to the declarant's [Shannon's] state of mind or emotion as Rule 803(3)
requires. Rather, Shannon's reported statements attributed acts and words to Hays; her statements
are silent as to any affect these might have had on her state of mind or emotions, although such
an affect might be imagined or inferred if one first believed the truth of her statements relating
what Hays said and did. See Jones v. State, 515 S.W.2d 126, 129 (Tex. Crim. App. 1974); cf.
Pena v. State, 864 S.W.2d 147, 149 (Tex. App.--Waco 1993, no pet.). We hold that admitting
the indicated items was error.

 The error is harmless, however, if the overwhelming evidence dissipates the effect
of the error upon the jury's function in determining the facts. See Harris v. State, 790 S.W.2d
568, 587 (Tex. Crim. App. 1989). Nevertheless, we may not hold the error harmless unless we
conclude beyond a reasonable doubt that the erroneously admitted evidence made no contribution
to Hays's conviction or punishment. Tex. R. App. P. 81(b)(2); Johnson v. State, 660 S.W.2d
536, 538 (Tex. Crim. App. 1983).

 In light of the undisputed eyewitness evidence of Hays's guilt of an execution-style
murder, we conclude beyond a reasonable doubt that the erroneously admitted hearsay evidence
did not contribute to his conviction or sentence. We overrule his first point of error. (2)

 In his third point of error, Hays complains the eight items of hearsay evidence were
erroneously admitted because they amount to evidence of extraneous offenses. He includes in his
complaint the additional non-hearsay testimony of a witness that Hays forced his way into her
home shouting "Where is she. Where is she." He was, evidently, inquiring about Shannon. As
discussed previously, we believe any error resulting from admitting the seven hearsay statements
does not require reversal. The additional hearsay statement regarding Shannon's desire to remain
friends with Hays cannot accurately be characterized as evidence of an extraneous offense. 
Concerning Hays's complaint about the non-hearsay testimony that Hays forced his way into the
home of the witness, shouting as he did, we hold the evidence admissible to show Hays's
relationship with Shannon. See Tex. Code Crim. Proc. Ann. art. 38.36(a) (West Supp. 1996); (3)
Pena, 864 S.W.2d at 150. We overrule Hays's third point of error.



IMPROPER IMPEACHMENT


 The State possessed a written statement purportedly given to the police and signed
by Chris Quenimen. In the statement, Quenimen related that he was with Hays four days before
the homicide and on that occasion Hays said that he was going to kill Shannon and himself. As
indicated below, the trial judge allowed the State to question Quenimen, in the jury's presence,
concerning the contents of the statement. In his second point of error, Hays contends this was
reversible error because the State's primary purpose in calling Quenimen was to place the
incriminating contents of the statement before the jury by means of a sham impeachment of
Quenimen following his testimony that he could not remember making the statement. See Tex.
R. Crim. Evid. 607; Garcia v. State, 887 S.W.2d 862, 873-74 (Tex. Crim. App. 1994), cert.
denied, 115 S. Ct. 1368 (1995); Hulen Wendorf, et al., Texas Rules of Evidence Manual, Crim.
607 at VI-37 (3d ed. 1991).

 Outside the jury's presence, Quenimen testified variously as follows: (1) he did
not remember giving the statement to the police or Rachel Shaw; (2) he recognized the statement;
(3) the statement bore his name at the top and his signature at the bottom; (4) the statement was
in his handwriting; (5) he did not know whether the contents were true; (6) he did not know and
could not remember whether he lied when he gave the statement; (7) he did not give the statement
to the police or Rachel Shaw; and (8) he signed the statement after reading it but he did not know
why he gave it.

 Before Quenimen was called to testify in the jury's presence, Hays's counsel
objected as follows:



The State is now on notice prior to his testimony that he doesn't remember
anything that occurred.


I'm going to object to the State being entitled to impeach their own witness through
a statement such as, something such as this, your honor.



The trial judge overruled the objection and Quenimen testified as follows before the jury: (1) he
did not remember being at the house on the occasion when Hays stated his intention to kill
Shannon and himself; (2) he did remember that Hays was present at the house on that occasion;
(3) he did not recall giving a statement concerning that occasion; (4) the written statement (which
was shown to him) bore his signature and he wrote it, but he did not recall doing so nor did he
recall filling in the printed parts and giving his birthdate and the number of his driver's license;
(5) when asked whether he remembered any incident like that described in the written statement,
he replied "I don't know nothing"; (6) no one threatened him when he gave the statement and no
one paid him in that connection; and (7) if he made the statement, he would not have lied.

 For purposes of discussion, we assume that defense counsel's objection was
sufficiently specific to raise for appellate review Hays's second point of error. Cf. Garcia, 887
S.W.2d at 874.

 It is plain from the record that Quenimen did not admit unequivocally that he gave
the statement shown to him and from which he was questioned. He was, moreover, given several
opportunities to admit or deny making the statement or to explain its contents after it was shown
to him. We hold the trial judge did not abuse his discretion in the circumstances. See Tex. R.
Crim. Evid. 612(a); McGary v. State, 750 S.W.2d 782, 786 (Tex. Crim. App. 1988); Aranda v.
State, 736 S.W.2d 702, 708 (Tex. Crim. App. 1987), cert. denied, 487 U.S. 1241 (1988); Smith
v. State, 520 S.W.2d 383, 386 (Tex. Crim. App. 1956); Debra T. Landis, Annotation, Denial of
Recollection As Inconsistent With Prior Statement So as to Render Statement Admissible, 99
A.L.R. 3d 934, 954-57 (1980). And because Hays did not request an instruction limiting use of
the statement contents to impeachment purposes alone, the State was free to argue the matters
about which Quenimen was questioned. See Tex. R. Crim. Evid. 105(a); Garcia, 887 S.W.2d
at 878; Smith, 520 S.W.2d at 386. We therefore overrule Hays's second point of error.



MISTRIAL


 In his fourth point of error, Hays contends the trial court erred in denying his
several requests for a mistrial. He contends first that the trial court should have granted his
request for mistrial when the prosecution elicited testimony prohibited by an order in limine. In
each instance, Hays objected, the trial judge sustained the objection, and instructed the jury to
disregard the evidence. We hold these instructions cured any prejudice. See Sheppard v. State,
545 S.W.2d 816, 818 (Tex. Crim. App. 1977). 

 In his argument to the jury, the prosecutor discussed what he would do to the
perpetrator of a crime committed against a member of his family and how this related to a person
of "ordinary temper." The trial judge sustained Hays's objection and instructed the jury to
disregard the argument as improper. We find this cured any prejudice. See Carter v. State, 614
S.W.2d 821, 823 (Tex. Crim. App. 1981). The prosecutor also declared in his argument "I think
[Hays] had already decided that nobody else was going to have her." The trial judge sustained
Hays's objection but declined to instruct the jury to disregard the comment. We believe the
absence of an instruction was harmless. The statement was, we believe, not calculated to inflame
the jury. (4) See Sheppard, 545 S.W.2d at 818. We overrule the point of error.



INADMISSIBLE PHOTOGRAPHS


 In his fifth point of error, Hays contends the trial court erred (1) in admitting the
State's photograph of Shannon, apparently taken in connection with her high-school graduation
while (2) refusing to receive in evidence a photograph of Shannon, taken when she was "booked"
at the sheriff's office, offered by Hays. We hold the first photograph was relevant, and therefore
admissible, to establish the identity of the decedent. See Tex. R. Crim. Evid. 401; Penry v. State,
903 S.W.2d 715, 751 (Tex. Crim. App. 1995). Because the first photograph had been admitted
in evidence for that purpose, the prejudicial effect of the second photograph outweighed in our
opinion any probative value attributed to it. See Tex. R. Crim. Evid. 403. We hold accordingly
and overrule Hays's fifth point of error.

 For the reasons given, we affirm the trial-court judgment.



 

 John Powers, Justice

Before Justices Powers, Jones and Kidd

Affirmed

Filed: May 8, 1996

Do Not Publish

1. [1] See Penal Code, 63d Leg., R.S., ch. 399, sec. 1, § 19.02, 1973 Tex. Gen. Laws 883,
913, amended by Act of May 28, 1973, 63d Leg., R.S., ch. 426, art. 2, § 1, 1973 Tex Gen.
Laws 1122, 1123 (Tex. Penal Code Ann. § 19.02, since amended) ("Murder"); Penal Code,
63d Leg., R.S., ch. 399, sec. 1, § 19.03, 1973 Tex. Gen. Laws 883, 913, amended by Act of
May 28, 1973, 63d Leg., R.S., ch. 426, art. 2, § 1, 1973 Tex. Gen. Laws 1122, 1124 (Tex.
Penal Code Ann. § 19.04, since amended) ("Voluntary Manslaughter"). 
2. [2] Unlike decisions finding inadmissible evidence contributed to the jury's verdict, the
State's case here is largely based on direct and not circumstantial evidence. See, e.g., Morales
v. State, 745 S.W.2d 483, 491 (Tex. App.--Corpus Christi 1988, no pet.); Contreras v. State,
766 S.W.2d 891, 892-93 (Tex. App.--San Antonio 1989, no pet.).
3. At the time the offense was committed, the statute now
codified at article 38.36(a) of the Code of Criminal Procedure
appeared in section 19.06 of the Penal Code. See Penal Code, 63d
Leg., R.S., ch. 399, sec. 1, § 19.05, 1973 Tex. Gen. Laws 883,
913, amended by Act of May 28, 1973, 63d Leg., R.S., ch. 426,
art. 2, § 1, 1973 Tex. Gen. Laws 1122, 1124 (Tex. Penal Code Ann.
§ 19.06, since repealed and recodified at Tex. Code Crim. Proc.
Ann. art. 38.36(a) (West Supp. 1996)). Because the
recodification effective September 1, 1994, had no substantive
effect, the Code of Criminal Procedure is cited for the sake of
convenience.
4. [4] Earlier in the State's jury argument, the prosecutor stated, "I don't mean, when I say I
think, Ladies and Gentlemen, I'm not giving you my personal opinion. I may slip and say
that. I apologize." This suggests that his statements were not calculated to inflame the minds
of the jury.


">
MISTRIAL


 In his fourth point of error, Hays contends the trial court erred in denying his
several requests for a mistrial. He contends first that the trial court should have granted his
request for mistrial when the prosecution elicited testimony prohibited by an order in limine. In
each instance, Hays objected, the trial judge sustained the objection, and instructed the jury to
disregard the evidence. We hold these instructions cured any prejudice. See Sheppard v. State,
545 S.W.2d 816, 818 (Tex. Crim. App. 1977). 

 In his argument to the jury, the prosecutor discussed what he would do to the
perpetrator of a crime committed against a member of his family and how this related to a person
of "ordinary temper." The trial judge sustained Hays's objection and instructed the jury to
disregard the argument as improper. We find this cured any prejudice. See Carter v. State, 614
S.W.2d 821, 823 (Tex. Crim. App. 1981). The prosecutor also declared in his argument "I think
[Hays] had already decided that nobody else was going to have her." The trial judge sustained
Hays's objection but declined to instruct the jury to disregard the comment. We believe the
absence of an instruction was harmless. The statement was, we believe, not calculated to inflame
the jury. (4) See Sheppard, 545 S.W.2d at 818. We overrule the point of error.



INADMISSIBLE PHOTOGRAPHS


 In his fifth point of error, Hays contends the trial court erred (1) in admitting the
State's photograph of Shannon, apparently taken in connection with her high-school graduation
while (2) refusing to receive in evidence a photograph of Shannon, taken when she was "booked"
at the sheriff's office, offered by Hays. We hold the first photograph was relevant, and therefore
admissible, to establish the i