Samuel Christopher HAWKINS, Appellant,

v.

The STATE of Texas, Appellee.

No. 65000.

Court of Criminal Appeals of Texas, En Banc.

July 20, 1983.

On Rehearing Oct. 19, 1983.

Russell C. Busby, Gene Storrs, Amarillo, for appellant.

Stephen F. Cross, Dist. Atty. and Gregg Norris and Dale D. Jensen, Asst. Dist. Atty., Borger, Linda L. Walden, Asst. Atty. Gen., Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for capital murder. Trial was held in Lubbock County following a change of venue from Hutchinson County. After finding appellant guilty of capital murder, the jury answered "yes" to the first two special issues under Art. 37.071(b). Punishment was assessed at death.

In his fourth ground of error, appellant challenges the validity of his warrantless arrest. He maintains the arrest was not based upon probable cause and the confession he gave following the arrest should have been suppressed. At the conclusion of a pretrial suppression hearing, the court found that appellant's arrest had been based upon probable cause.

Betty Thompson testified that on June 30, 1977, she observed appellant drive by her home. She saw appellant park his car, approach her house and open a storm door at the front of the house. Fearful that appellant was about to enter her home, Thompson had her son, who was armed with a rifle, escort appellant back to his car. Thompson then called the authorities and gave them a description of appellant and the license plate number of the car he was driving.

Earl Bowden testified that while working in his yard on June 30, 1977, he saw appellant enter a neighbor's home through a window. Shortly thereafter, Bowden saw appellant leave the home through a door. Bowden notified the owner of the burglary

and gave him the license number of the car the intruder had been driving.

Detective Darrell Garner, of the Amarillo Police Department, testified that he investigated the incident which occurred at Thompson's home. Garner obtained appellant's name and address after running the license plate number given by Thompson through vehicle registration records. Accompanied by fellow officers, Garner went to appellant's home in Amarillo. Appellant's wife told the officers her husband was not home at the time. Later in the day, Garner returned to appellant's home and observed appellant trying to leave the house through a window. Garner ordered appellant back into the house.

Deputy Eddie Kirkwood, of the Potter County Sheriff's Office, was with Garner the second time officers went to appellant's home. Following a short conversation, appellant agreed to follow the officers to the Amarillo Police Department to answer questions concerning the incidents Thompson and Bowden had observed. When Kirkwood was returning to his car, he saw appellant fleeing from the house and through a neighbor's backyard. Kirkwood then apprehended appellant and transported him to the Amarillo Police Department. Kirkwood stated that appellant was arrested due to the similarities in his appearance and his license plate number to those which had been observed by Thompson and Bowden.

■ It is well established that probable cause to arrest exists when the knowledge of the arresting officer and of which he has reasonably trustworthy information would warrant a reasonable and prudent man in believing that a particular person has committed or is committing a crime. *Hooper v. State,* 516 S.W.2d 941. In *Jones v. State,* 565 S.W.2d 934, it was concluded that officers had probable cause for an arrest after they recognized the defendant based upon a description given by the robbery victim and a co-defendant. Likewise, in *Loving v. State,* 559 S.W.2d 363, an arrest was based upon probable cause when the arrest was made upon a description of the defendant's car given by witnesses who had been present at the scene of a stabbing. Finally, Art. 14.04, V.A.C.C.P., provides as follows with regard to a warrantless arrest:

"Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused."

■ We conclude that Kirkwood's arrest of appellant was based upon probable cause. As stated above, the arrest was based upon the similarities in appearance of appellant and his car to the description given by Thompson and observations of Bowden. Moreover, appellant's attempted escape dispensed with the necessity of officers obtaining a warrant for his arrest. Appellant's fourth ground of error is without merit.

In his third ground of error, appellant contends the trial court erred in admitting his written statement into evidence. He maintains that he was induced to give the statement as a result of authorities promising to seek psychiatric help for him. He further contends that he did not voluntarily waive his right to counsel.

Appellant filed a motion to suppress his confession and the court held· a hearing thereon in compliance with *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) and Art. 38.22, V.A.C.C.P. At the conclusion of the hearing, the court found that the confession would be admissible and entered findings which recite that appellant "was not coerced into making any statement by any force, threats, persuasion or promises or any other improper influence" and that appellant "waived his right to be represented by counsel."

Upon being arrested by Kirkwood, appellant was given his *Miranda*[1] warnings. He was then transported to the Amarillo Police Department arriving at approximately 12:15 p.m. on June 30, 1977. Upon his

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

arrival at the police station, appellant was given his warnings a second time. At 3:00 p.m., appellant's wife came to the police station and visited with him for approximately thirty minutes. Following this visit, appellant was not questioned again until after a lineup was conducted at 7:30 p.m.

Numerous officers then questioned appellant from 7:30 p.m. until the next morning at 4:20 a.m. During this period, appellant gave authorities three written statements. The instant statement was the second given by appellant in the early morning hours of July 1, 1977.[2]

Detective James LaFavers, of the Amarillo Police Department, began questioning appellant at 11:20 p.m. LaFavers testified he gave appellant his warnings before the questioning began. At no point in the interrogation did appellant indicate that he wanted to speak with a lawyer or stop the interrogation. With regard to a promise for psychiatric care, LaFavers testified as follows:

"Q. Did you promise him any benefit or any psychiatric treatment or anything at all to induce him perhaps to make a statement of this nature?

"A. No.

"Q. Did anyone else in your presence make such a promise that you can recall?

"A. No."

Captain E.N. Smith, of the Amarillo Police Department, assisted LaFavers in the interrogation of appellant. Smith testified that appellant never stated that he wanted a lawyer present during the questioning. Sergeant Isaiah Garrett, of the Potter County Sheriff's Office, participated in the interrogation and testified as follows with regard to a promise for any type of mental treatment in return for a confession:

"Q. Did you talk to him about the possibility of mental treatment, mental help, obtaining mental help through the Court?

"A. I did mention that to him. I said it would be up to the Judge or your lawyer.

" . . .

"Q. Did you tell him that the best way to get that mental help would be to confess?

"A. I didn't tell him. He asked me. I told—he asked me.

"Q. What specifically did he ask you?

"A. He asked me about his mental problem. He said he would like—could he see a doctor or a—get to see a psychiatrist or something. I told him it would be through the Judge or a lawyer.

"Q. Did you tell him that he couldn't get to a Judge or a lawyer, especially a Judge, couldn't get to a Judge until he confessed and was arraigned and everything?

"A. No, sir, I did not.

"Q. You say you told him it would be up to the Court or his lawyer, right?

" . . .

"A. Yes, sir."

Appellant testified he never received his warnings from any of the officers. He stated that he repeatedly asked that the questioning cease and that he be given an opportunity to call a lawyer. Appellant related that LaFavers told him that he would be given psychiatric treatment if he would sign the statement.

A tape recording made during a part of the interrogation was introduced into evidence during the suppression hearing by appellant. A transcription of that recording reflects that LaFavers made the following statements to appellant:

"LA FAVERS: It a . . . . . . Its something that you yourself can't hold yourself at fault for. It a . . . . . . It is something that occasionally happens to some of us, but its nothing that can't be helped. Its something that we can help you with and we'll try. We will do that. We understand what you situation is, We do.

---

**2.** In *Hawkins v. State*, 613 S.W.2d 720, this Court found no error in the court admitting the first written statement appellant gave to authorities in which he admitted his guilt to another capital murder.

We're not here to in any way punish you or criticise you because it is understandable what your situation is.

\* \* \* \* \* \*

"LA FAVERS: Sam, to be honest with you I would ...... I would think that the courts in your situation wouldn't be very lenient. I really do. I think that they will observe the fact that you need help ...... you're trying to seek that help already psychological—psychiatric help and a ...... I think they would recommend a psychiatrist. Okay."

██ The judge at the *Jackson v. Denno* hearing is the sole judge of the weight and credibility of the witnesses. He may believe or disbelieve all or any part of any witness' testimony. *Hughes v. State,* 562 S.W.2d 857; *Myre v. State,* 545 S.W.2d 820. Whether a defendant waives his right to remain silent and have counsel present during questioning is to be determined based upon the totality of the circumstances. *Williams v. State,* 566 S.W.2d 919. A waiver of counsel does not have to be expressly made, but, can be determined from the circumstances surrounding the taking of the confession. *Moreno v. State,* 511 S.W.2d 273. Thus, the fact that a defendant does not specifically say that he waives counsel does not prevent the trial court from concluding that he knowingly and intelligently waived counsel. *Thomas v. State,* 458 S.W.2d 817.

██ The evidence in the instant case raised issues of fact as to waiver of counsel and alleged improper acts by LaFavers in promising to seek psychiatric care for appellant. We find there was evidence to support the trial court's finding that appellant waived counsel and that appellant was not coerced into making the statement by a promise from authorities. We conclude that under the totality of the circumstances the evidence supports the court's finding that appellant's confession was freely and voluntarily given after he had been fully appraised of his rights and affirmatively waives those rights. Appellant's third ground of error is overruled.

██ In his sixth ground of error, appellant challenges the sufficiency of the evidence to support his conviction for capital murder. The indictment alleges in pertinent part that on May 3, 1977, appellant did:

"intentionally and knowingly cause the death of an individual, ABBE RODGERS HAMILTON, by stabbing her with a knife; and the said SAMUEL CHRISTOPHER HAWKINS did then and there intentionally cause the death of the said ABBE RODGERS HAMILTON in the course of attempting to commit the offense of Aggravated Rape, to-wit: SAMUEL CHRISTOPHER HAWKINS did then and there with the specific intent to commit the offense of Aggravated Rape, did then and there knowingly and intentionally attempt to have sexual intercourse with ABBE RODGERS HAMILTON, a female not his wife, without ABBE RODGERS HAMILTON's consent, and the said SAMUEL CHRISTOPHER HAWKINS attempted to compel ABBE RODGERS HAMILTON to submit by the use of a threat that would prevent resistance by a woman of ordinary resolution under the same or similar circumstances because of a reasonable fear of harm; and the said SAMUEL CHRISTOPHER HAWKINS did then and there attempt to compel the said ABBE RODGERS HAMILTON to submit to sexual intercourse with the said SAMUEL CHRISTOPHER HAWKINS by threat of serious bodily injury to be imminently inflicted on ABBE RODGERS HAMILTON,"

William Hamilton testified he and his wife, Abbe, lived in Borger. On May 2, 1977, Hamilton left his home late in the evening in order to report to work by 11:30 p.m. Before Hamilton left for work, he and his wife had sexual intercourse. At the time he left, Hamilton's wife was in bed, clothed in a gown and a pair of panties. When he returned home the following morning at 9:00 a.m., Hamilton found his wife still asleep in the bed. He then left the house for approximately 45 minutes. Upon returning, Hamilton found his wife

who was six months pregnant lying in the blood-soaked bed with her hands and feet bound with pieces of red and white cloth. Hamilton immediately attempted to call an ambulance but discovered that the phone line had been cut. He then went to the home of a neighbor, Hollis Mahon, who in turn notified authorities of the discovery of Hamilton's wife. Grace Mahon testified that after Hamilton used her phone, she went to Hamilton's house and saw his wife's body. She related that her efforts to locate a pulse were unsuccessful.

Officer Bruce Lemery, of the Borger Police Department, testified he was the first officer to arrive at the scene of the offense. The victim had been stabbed numerous times with several severe wounds about the neck. Although the victim was still clothed in a gown, she was no longer wearing panties. A pair of panties was found a short distance from the bed.

Sheriff Lon Blackmon, of Hutchinson County, testified he took custody of various items of evidence found at the scene of the offense. Among these items were the panties, two napkins found underneath the victim's body and the pillowcases off the bed. Blackmon sent these items to the Federal Bureau of Investigation (FBI) laboratory in Washington, D.C., for analysis.

Special Agent Robert Spalding, of the FBI, testified that he worked in the field of forensic serology which is the study of blood and body fluids in stain form. Spalding related that tests run upon the panties he received from Blackmon proved positive for the presence of seminal materials or stains.

Officer J.D. Reimer, of the Lubbock Police Department, testified that on March 7, 1978, he collected several hair samples from appellant's head. Reimer turned these samples over to FBI Special Agent Robert Neill.

Neill related that he was a specialist in the field of forensic microscopy which is the study of fibers, hairs and textiles using microscopic methods. An examination of the napkins found under the victim's body revealed numerous human hairs. Neill found some of the hairs on the napkin to have been of a "negroid origin." A comparison of the hair samples received from Reimer and those found on the napkin showed all of the hairs to have the same range of microscopic characteristics. Neill's analysis revealed twenty similarities between appellant's hair and the hair found on the napkin at the scene of the offense. The comparison between the hairs did not show any dissimilar characteristics. Neill testified that it was his opinion that the hairs found on the napkins had come from appellant or some other person with an identical range of hair characteristics.

The victim's husband, William Hamilton, was recalled to the stand and testified that no blacks lived near his home. He further stated that he had never had a black person enter his home.

Christine Cantrell testified she lived near the Hamilton home. At 9:30 a.m. on the morning of the offense, Cantrell noticed a light two-tone car in the victim's driveway. The car she saw was of the same type which was later discovered at appellant's home. Cantrell further stated that she saw a tall slender black man standing next to the car in the victim's driveway.

Dr. Jose Diaz-Esquivel performed an autopsy upon the deceased. His examination revealed four wounds to the neck which appeared to have been made with a knife-like instrument. One of the wounds was approximately one and three-quarters inches deep and had severed the victim's jugular vein. Diaz-Esquivel stated that the victim had bled to death as a result of her neck wounds. Tests revealed that the victim had intercourse within twenty-four hours of her death.

Larry Clark testified he was appellant's supervisor at the Iowa Beef plant. The plant was shown to be approximately fifty miles from Borger. Appellant reported for work at 2:40 p.m. on the day of the offense. Clark stated that appellant was employed as a trimmer on a fleshing crew at the plant. Appellant's work called upon him to be semi-skilled in the use of an instrument called a skinner's knife.

Detective James LaFavers, of the Amarillo Police Department, testified that appellant was arrested for an unrelated offense on June 30, 1977. Following his arrest, appellant signed a written statement concerning the instant offense. A portion of that statement is as follows:

"My name is Samuel Christopher Hawkins ... A short while ago, I can't remember exactly when, I drove to Borger, Texas with a friend.... We went in my friends car. The man I was with met one of his old girl friends and stayed with her so I took his car. I started looking around Borger for somebody to rape. I drove to the south part of Borger. I started checking doors and came to a house that had one open. This house was facing west, and it had a drive way that went north and south. The house was a red color and they were building a room on the end of it. There was a red Monte Carlo, I think it was about a 1976 model, parked in the driveway. There was also another small car in the driveway and I think it was a Pinto or a Vega. I parked my car in the area of the driveway, right behind the Monte Carlo and Pinto. I checked the door and it was open. I walked straight into a bedroom that seems like it was kind of behind the kitchen and to the left. I had a hunting knife that I had bought at the T.G. & Y. store on 24th. and North Grand st. in my hand. I noticed a woman lying on a bed on her side. I put the knife to the womans throat and she jumped. When the woman jumped, the knife went into her neck. The woman got hysterical and reached up and felt the blood on her neck and started screaming 'give me a towel, give me a towel.' When the woman got hysterical, I did to. I started stabbing the woman in the neck but I don't know how many times I stabbed her. When the woman became hysterical, she grabbed the telephone and was going to call on it. I guess this is when I cut her again. The woman was holding the phone, and I took the knife and cut the wire. I then went into the dining area and got some red and white napkins. The red and white design was in squares. I made an attempt to calm her down and tie her up. I had cut the napkins with the knife that I had and used these to tie her with. The woman wouldn't give up so this is when I cut her again. I couldn't tie the woman up as such so the knots stayed loose. I did not think that the woman was dead when I left but I didn't know for sure. I did not rape this woman but I intended to when I went in the house. I got scared when I stabbed the woman and this is why I didn't rape her and I ran out of the house...."

In support of his contention that the evidence is insufficient, appellant points to the fact that his confession does not contain the date of the offense or the name of the victim. Appellant has overlooked the fact that his confession was not the only item of evidence the State offered in an attempt to prove his guilt.

We conclude that when viewed in the light most favorable to the jury's verdict, the evidence is sufficient to exclude every reasonable hypothesis except for that of appellant's guilt. Appellant's sixth ground of error is overruled.

■ In his eighth ground of error, appellant contends that his indictment is fundamentally defective. He maintains that the indictment fails to allege the manner or means used in bringing about the death of the deceased.

In *Nelson v. State*, 573 S.W.2d 9, it was held that an indictment charging the offense of murder must allege the means used to commit the offense if such means are known to the grand jury. The indictment in the instant case alleges that appellant caused the death of the deceased "by stabbing her with a knife." Clearly, appellant's contention is not supported by the record and is without merit.

In his second ground of error, appellant contends that he was denied the effective assistance of counsel. He points to some seven acts or omissions by counsel which he argues turned his trial into a farce and mockery of justice.

First, he claims that his attorneys committed aggravated perjury at the suppression hearing. However, the record reflects that appellant's attorneys did not testify at the hearing. Appellant next claims that his attorneys conspired to prepare a "false psychiatric report." There is no support for this contention in the record.

Appellant next complains of certain statements made in counsel's brief regarding the hair comparisons. Pursuant to appellant's request, he is now represented pro se on appeal. He is in no position to complain of statements made in a brief which has now been filed as amicus curiae.

Appellant complains that his attorneys suppressed the testimony of Deputy Sheriff Isaiah Garrett. The record reflects that Garrett testified both at the pretrial suppression hearing and at trial on the merits. The remaining complaints raised by appellant concern statements made in the amicus curiae brief or are not supported by the record.

This Court will hold that counsel's assistance was ineffective if it appears from the entire record that the defendant did not receive effective assistance. *Cude v. State,* 588 S.W.2d 895. Thus, the totality of the attorney's representation will be considered. *Benoit v. State,* 561 S.W.2d 810. However, this Court will not second-guess through hindsight the strategy of counsel at trial nor will the fact that another attorney might have pursued a different course of action support a finding of ineffectiveness. *Blott v. State,* 588 S.W.2d 588.

Appellant's allegation of ineffective assistance of counsel is not firmly founded by the record and is accordingly without merit. *Benoit v. State,* supra. Appellant's second ground of error is without merit.

In his first ground of error, appellant contends that his conviction was obtained through the use of perjured testimony. He maintains that certain participants in the trial including the judge, prosecutors and defense counsel conspired to have witnesses present perjured testimony. The alleged perjured testimony was to the effect that appellant had not been promised psychiatric treatment in return for his confession.

Although appellant contends that "several police officers committed aggravated perjury," the only witness he specifically points to is Garrett. At the suppression hearing, Garrett denied having told appellant that he could only get psychiatric care in return for a confession. During trial, Garrett was questioned concerning the statements LaFavers made to appellant as contained in the transcription of the tape recording made during the interrogation. In those statements, LaFavers told appellant that the courts would probably recommend psychiatric help for his problem.

The State is not allowed to obtain a conviction through the knowing use of perjured testimony. *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217. Furthermore, reversal must follow if the prosecutor presents a false picture of the facts by failing to correct its own testimony when it becomes apparent that it was false. *Napue v. Illinois,* supra; *Means v. State,* 429 S.W.2d 490. Lastly, the appellant bears the burden of showing that the testimony used by the State was in fact perjured. *Luck v. State,* 588 S.W.2d 371.

In the instant case, the necessary fact of perjury or false evidence has not been established. There is nothing in the testimony of Garrett, nor elsewhere in the record to show that any part of his testimony was false or that the State knew of and conspired to present any alleged perjury. Without support in the record, appellant's contention is without merit. *Williams v. State,* 513 S.W.2d 54; *Nelson v. State,* 511 S.W.2d 18.

In his fifth ground of error, appellant contends that he was denied due process of law when the State suppressed evidence which was allegedly favorable to him. Such evidence consisted of the tape recording made during appellant's interrogation.

Suppression by the prosecutor of evidence favorable to the accused violates due process when the evidence is material

to guilt or punishment. *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Frank v. State,* 558 S.W.2d 12. Thus, there must be suppression of material evidence requested by a defendant before a criminal prosecution will be reversed on appeal. *Iness v. State,* 606 S.W.2d 306.

Appellant's contention that the tape recording was suppressed by the State is simply not supported by the record. Appellant had access to the tape and introduced it into evidence during the pretrial suppression hearing. When the State sought to introduce the tape into evidence before the jury, appellant's objection was sustained. Appellant made use of the transcription of the tape recording during cross-examination of LaFavers during trial. Finally, appellant had access to a transcription of the tape which was admitted into evidence only for purpose of the record on appeal.

It appears to be appellant's complaint that he was not allowed to play the tape recording before the jury. The record reflects that out of the jury's presence, appellant stated that he wanted to play the tape in order to expose LaFaver's "lies" concerning the confession. The court informed appellant that he would not be allowed to offer any evidence until the State had concluded its case-in-chief. Appellant has not directed our attention to any effort he made to play the tape during the presentation of defensive evidence.

The record fails to support appellant's contention that the State suppressed the tape recording. Accordingly, this ground of error is without merit.

In his ninth ground of error, appellant contends the court erred in sustaining the State's challenge for cause to prospective juror Nettie Jo Pritchard. The record reflects that Pritchard had great difficulty in understanding the term reasonable doubt. She stated that the State's proof would have to convince her to a certainty before she would find appellant guilty. She further stated that if there was any doubt in her mind, she would consider such a doubt to be reasonable. Finally, Pritchard stated as follows:

"Q. Now, this is what we need to know, basically. Again, which of the tests—I understand that you could reach a decision, but which of the tests are you going to apply, the moral certainty test or reasonable doubt test?

" . . .

"THE JUROR: I have to answer by saying that it would be a certainty on my part of guilt or innocence, which to me, as he was saying—excuse me, is my definition of reasonable doubt."

■ Art. 35.16(b)(3), V.A.C.C.P. provides that a challenge for cause may be made by the State if the juror has a bias or prejudice against any phase of the law upon· which the State is entitled to rely for conviction or punishment. Thus, the State may properly challenge for cause a prospective juror who indicates that he will hold the State to a more stringent standard of proof than that of beyond a reasonable doubt. *Bodde v. State,* 568 S.W.2d 344. In *Hughes v. State,* 562 S.W.2d 857, it was found that a prospective juror had been properly challenged for cause after he stated that "there could not be an iota of doubt" before he could answer each of the three issues under Art. 37.071, supra, in the affirmative.

■ In the instant case, Pritchard's testimony demonstrates that she would have held the State to a higher burden of proof than that beyond a reasonable doubt. She repeatedly stated that the proof would have to convince her to a certainty before she would vote to convict. We find the court properly sustained the State's challenge for cause as to Pritchard. Appellant's ninth ground of error is overruled.

■ In his eleventh ground of error, appellant contends the court erred in sustaining the State's challenge for cause to prospective juror Jimmie Williams. He maintains she was excused in violation of the standards set forth in *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

In response to questions from the prosecutor, Williams testified as follows:

"Q. . . .

"Now, I would like to ask you whether or not you could think of any case or any fact situation where you could sit on a jury with the rest of the people in the jury, and if a capital felony is proven, to convict any Defendant of a capital felony, could you be personally in that jury box and participate in voting a verdict which would in essence sentence a person to his death?

"A. No, I don't think so.

"Q. Okay. Can you think of any fact situation or any case at all which might make that possible for you to do, or are your beliefs just so strong that you can't do that?

"A. No, I think that their only hope is to—if they live, then maybe they are—they might have a change of heart.

"Q. Okay. So, would you or would you not, if you were placed in that position and you had to hear facts concerning a case which could carry a possible death penalty, would you or would you not more or less automatically vote against the death penalty because of your conscientious and religious scruples?

"A. Yes, I think I would have to vote against it."

As this Court noted in *White v. State,* 543 S.W.2d 104:

" . . . it was made abundantly clear in *Witherspoon* that the decision reached therein had no bearing on the right of the prosecution to challenge for cause any prospective juror who stated that he would automatically vote against the imposition of capital punishment without regard to the evidence which might be developed at the trial or that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt."

Williams' testimony thus reflects she would have voted in such a manner as to avoid the death penalty for appellant without regard to the evidence which might be developed at trial. Under such circumstances, Williams was properly excused under the standards set forth in *Witherspoon.* See *Esquivel v. State,* 595 S.W.2d 516. Appellant's eleventh ground of error is overruled.

In a document styled "7 Factors For Review," appellant presents seven contentions which he argues warrant a reversal of his conviction. Five of those contentions challenge the sufficiency of the evidence from the guilt or innocence phase of the trial. We have previously addressed the sufficiency of the evidence in appellant's sixth ground of error.

■ Appellant contends the court's charge was erroneous in failing to instruct the jury on the affirmative defense of insanity. V.T.C.A. Penal Code, Sec. 8.01. Appellant did not request such a charge at trial, nor did he object to the failure of the charge to include such an instruction. No error is shown.

■ Appellant further maintains the court's charge was erroneous because it failed to "instruct the jury on the law of the confession." The record reflects the court charged the jury that before the confession could be considered as evidence, it must find that appellant voluntarily gave the confession after knowingly waiving his right to counsel and self-incrimination. See Art. 38.23, V.A.C.C.P. Therefore, appellant's contention is not supported by the record and is without merit.

■ Appellant next contends that the trial court erred in admitting the testimony of Dr. Hugh Pennal during the guilt or innocence phase of the trial. Appellant argues that Pennal's testimony violated the exclusionary rule of Art. 46.02, Sec. 3(g), V.A.C.C.P., which provides:

"No statement made by the defendant during the examination or hearing on his competency to stand trial may be admitted in evidence against the defendant on the issue of guilt in any criminal proceeding."

In our examination of the record, we have been unable to find an order appoint-

ing Pennal to examine appellant. Although Pennal's written report filed with the court states he examined appellant pursuant to the court's request, there is no indication that such request was limited to the issue of competency. Indeed, the report prepared by Pennal addresses the issues of both competency and sanity. In the absence of evidence showing that Pennal was appointed solely to determine competency under Art. 46.02, supra, the record does not show a violation of Art. 46.02, Sec. 3(g), supra. See *Riles v. State,* 595 S.W.2d 858. Finally, we note that there was no objection to Pennal's testimony on the basis of an alleged Art. 46.02, Sec. 3(g), supra, violation at the time the evidence was presented.

■ Appellant next contends that the trial court erred in admitting the testimony of Richard Wall, a clinical psychologist, during the guilt or innocence phase. As in the case of Pennal, appellant contends that the use of Wall's testimony was in violation of Art. 46.02, Sec. 3(g), supra. Initially, we note that Wall was called as a witness by appellant.

The record reflects that Wall was appointed by the court to examine appellant relative to the questions of competency and sanity. In *DeRusse v. State,* 579 S.W.2d 224, this Court stated:

"Any psychiatric examination with regard to the defendant's sanity at the time of the offense, and any testimony by the psychiatrist based on that examination, must necessarily deal with the defendant's conduct, and his perception thereof, at the time of the offense. The statements of the defendant to the psychiatrist concerning that conduct are, therefore, highly probative on the issue of the insanity defense. As a consequence, Art. 46.03, Sec. 3, V.A.C.C.P., contains no prohibition against the use of the defendant's statements at his trial similar to the prohibition found in Art. 46.02, Sec. 3(g), supra.

"We can perceive of no reason to apply Art. 46.02, Sec. 3(g), so as to forbid the trial use, relative to the sanity defense, of the defendant's statements to the psychi-

atrist during a combined competence/sanity examination pursuant to Art. 46.03, Sec. 3(g), supra. Psychiatric testimony with regard to the defendant's sanity at the time of the offense would hardly be possible if statements by the defendant during his examination were inadmissible, and the jury would be deprived of valuable evidence relative to the insanity defense. Moreover, to allow the statements of the defendant during an Art. 46.03, Sec. 3(g), examination to be admitted in evidence at his trial causes no unique prejudice to the defendant; he is in precisely the same position as any other defendant who is examined with regard to the insanity defense." Id. at 229, 230.

Since Wall's appointment directed him to conduct a combined competence/sanity examination, Art. 46.02, Sec. 3(g), supra, did not act to prohibit his testimony. Appellant's contention is without merit.

■ In an unnumbered and somewhat unintelligible ground of error, appellant alleges "the trial court erred in accepting the appellant plea of insanity." Appellant cites Art. 26.13, V.A.C.C.P., and argues that the trial court had a duty to inquire into the voluntariness of his plea.

The judgment in this case recites that the court entered a plea of not guilty for appellant. Art. 26.12, V.A.C.C.P. By its very terms, Art. 26.13, supra, only applies in the case of a plea of guilty or nolo contendere. Therefore, Art. 26.13, supra, has no application to the instant case and there was no requirement to inquire as to the voluntariness of the plea entered on appellant's behalf by the court. This contention is without merit.

In his tenth ground of error, appellant contends the court erred in failing to grant a mistrial due to improper jury argument during the punishment phase of the trial. Appellant directs our attention to two instances in which he maintains that the prosecutor commented upon his failure to testify.

The arguments appellant complains of are as follows:

"MS. WALDEN: . . .

"I think another way that you might be able to determine whether or not he is likely to do a criminally violent act in the future would be to look to the Defendant himself. You have been able to observe him during this trial. Have you seen any showing of remorse? Have you seen him—a showing of any type of reform or I'm sorry I did this? Ladies and gentlemen, you'll just have—

". . .

"MS. WALDEN: Ladies and gentlemen, let me clear that up a little bit. What I am speaking of when I am speaking of no remorse is the fact that the Defendant has been sitting here like the rest of the Counsel for six weeks and you have had ample opportunity to observe his physical actions in the courtroom and my remarks are only limited to your physical observation of him."

Following each of these instances, appellant's objection was sustained and the jury was instructed to disregard the complained of argument. Motions for a mistrial based upon the argument were denied.

 Art. 38.08, V.A.C.C.P. provides that it is improper for a prosecutor to comment upon a defendant's failure to testify. In order for such a comment to be error, it must be direct and not an indirect allusion which might refer to the accused's failure to testify. *Wright v. State,* 582 S.W.2d 845.

In *Tarpley v. State,* 565 S.W.2d 525, the prosecutor stated (referring to the defendant):

"He's shown no reason to me, and I don't think he's shown you any reason why he shouldn't be put away—"

No error was found in the argument in that it could reasonably have been taken as a reference not to the defendant's failure to testify but to his failure to present witnesses or evidence of any kind in his behalf. Likewise, in *Turner v. State,* 504 S.W.2d 843, an argument which referred to the defendant's lack of emotion during trial was found to be permissible. See *McMahon v. State,* 582 S.W.2d 786.

 At a hearing on his motion for new trial, appellant stated that he "tried to mentally escape [from the trial] many times by falling asleep." The complained of argument specifically referred the jury to their observations of appellant during the course of the trial. We conclude that the arguments were not such that the jury would naturally and necessarily take them as comments upon appellant's failure to testify at trial. Assuming arguendo that the comments did in fact refer to appellant's failure to testify, we find that the court's instructions to disregard were sufficient to cure the errors, if any. *Thompson v. State,* 537 S.W.2d 732; *Alvarez v. State,* 478 S.W.2d 450. Appellant's tenth ground of error is without merit.

On October 1, 1980, following a hearing in the trial court, this Court granted appellant's pro se motion requesting that he be allowed to proceed pro se in this appeal and that court-appointed counsel on appeal be dismissed. It was ordered that the brief previously filed by court-appointed counsel be retained with the record as an amicus curiae brief.

The amicus curiae brief presents twelve grounds of error. Five of the grounds of error are identical to grounds of error presented by appellant in his pro se brief.

In his fourth ground of error, the amicus curiae contends the court erred in admitting thirty-five color photographs into evidence. The photographs depict the scene of the offense and condition of the deceased's body. It is maintained that the photographs were admitted solely to inflame the jury.

 Testimony concerning the scene of a murder, including a description of the body is admissible to throw light on the transaction and reveal its general nature. *Campbell v. State,* 525 S.W.2d 4. If a verbal description of the body and scene is admissible, then a photograph depicting the same is admissible. *Luck v. State,* 588 S.W.2d 371; *Martin v. State,* 475 S.W.2d

265. It has been stated that a photograph is merely a graphic portrayal of oral testimony. *Welch v. State,* 576 S.W.2d 638.

■ We conclude the photographs in question depicting the physical condition of the body and scene of the offense were properly admitted into evidence. This ground of error is without merit.

In his sixth ground of error, the amicus curiae contends the court erred in failing to grant a mistrial. He maintains that a mistrial should have been granted which the State presented evidence of an extraneous offense.

Detective Bill Eaton, of the Amarillo Police Department, testified he was present at the police station while appellant was being interrogated. The prosecutor asked Eaton the following question which forms the basis for this ground of error:

"Q. Now, you stated that he related to you details of the offense. Are you speaking about the Borger offense?

"A. I am sorry, I didn't understand the question."

Appellant's objection to the question was sustained, but the court denied his motion for a mistrial. There was no request for the court to instruct the jury to disregard the complained of question.

■ Generally, an error in asking an improper question in a criminal proceeding may be cured or rendered harmless by its withdrawal or an instruction to disregard; except in extreme cases where it appears that the question is clearly calculated to inflame the minds of the jury and is of such a character so as to suggest the impossibility of withdrawing the impression produced on the juror's minds. *Cavender v. State,*

547 S.W.2d 601; *Sheppard v. State,* 545 S.W.2d 816. In *Legg v. State,* 594 S.W.2d 429, this Court stated:

"Appellant urges that evidence of an extraneous offense was improperly admitted. During the trial the prosecutor asked Carolyn Gilmore, jail administrator for the Taylor County Jail, to identify appellant in court. The prosecutor then asked Gilmore:

" 'Q. And how long had he been in jail on this particular—This time, when you had him in there in July?'

"Appellant objected to the question as 'tending' to show an extraneous offense. It is not clear how the court ruled on the objection, but it did grant appellant's request for an instruction to disregard. Appellant's motion for mistrial was overruled. No mention of any specific extraneous offense was made. The court's instruction was sufficient to cure any error in the question . . . ." Id. at 433.

■ The complained of question in the instant case tended to imply that appellant confessed to more than one offense. However, as in *Legg,* no mention of any specific extraneous offense was made. We conclude that the question was of such a character that an instruction to disregard would have been sufficient to cure the error. Appellant's failure to request such an instruction waives the error now presented.

■ In his eighth ground of error, the amicus curiae contend the court erred in communicating with the jury during deliberations. He maintains it was necessary for the appellant to personally waive the reading of further instructions in open court to the jury.[3]

---

3. Appellant's contention is based upon Art. 36.-27, V.A.C.C.P., which provides:

"When the jury wishes to communicate with the court, it shall so notify the sheriff, who shall inform the court thereof. Any communication relative to the cause must be written, prepared by the foreman and shall be submitted to the court through the bailiff. The court shall answer any such communication in writing, and before giving such answer to the jury shall use reasonable diligence to secure the presence of the defendant and his counsel, and shall first submit the question and also submit his answer to the same to the defendant or his counsel or objections and exceptions, in the same manner as any other written instructions are submitted to such counsel, before the court gives such answer to the jury, but if he is unable to secure the presence of the defendant and his counsel, then he shall proceed to answer the same as he deems proper. *The written instruction or answer to the communication*

The record reflects that while the jury was deliberating during the guilt or innocence phase, the following transpired:

"THE COURT: All right, Counsel, for the record I have received the following note from the jury: It appears to the jury that in Paragraph 1 the phrase intentionally and knowingly is in conflict with the phrase in Paragraph 6 reading intentionally or knowingly. What is the wording supposed to be? Is this correct or a typographical error? Signed Thomas Loper, foreman.

"What I intend to do is provide the—is that the charge is correct as submitted. Is it agreeable with everyone that I can simply type that up and sign it and let Mr. Wilbanks hand it to the jury at the—

"MR. STORRS: Yes, sir, Your Honor. We would waive the option of the Defendant and we would also waive the requirement of the jury being brought back into the box.

"THE COURT: Is that agreeable with the State?

"MR. CROSS: It's agreeable with the State, Your Honor.

"THE COURT: All right."

We do not find it necessary to reach the merits of the contention presented in this ground of error. This Court has held that a contention concerning noncompliance with Art. 36.27, supra, cannot be reviewed on appeal in the absence of a timely objection at trial. *Pless v. State*, 576 S.W.2d 83; *Edwards v. State*, 558 S.W.2d 452. In the instant case, there was no objection to the procedure utilized by the court in answering the jury's question. Nothing is presented for review.

■ In his ninth ground of error, the amicus curiae contends the court erred in refusing to submit his specially requested jury charge which contained a definition of the term deliberately. In *King v. State*, 553 S.W.2d 105, a similar contention was raised with respect to the term deliberately and this Court held that the court need not

provide a special definition for the term in its charge to the jury. This ground of error is without merit.

In his tenth ground of error, the amicus curiae contends that the court erred in refusing to submit his requested charge on the specific intent to kill. The requested charge is as follows:

"Before you would be warranted in convicting the Defendant of capital murder, you must find from the evidence, beyond a reasonable doubt, not only that on the occasion in question the Defendant was engaged in the attempted commission of the felony offense of aggravated rape as defined in this charge, but also that during the commission of the attempted aggravated rape, if any, the Defendant stabbed ABBE RODGERS HAMILTON with the intention of thereby killing her. Unless you find from the evidence beyond a reasonable doubt that the Defendant on said occasion specifically intended to kill the said ABBE RODGERS HAMILTON when he stabbed her with a knife, if he did stab her with a knife, you can not convict him of the offense of capital murder."

The record reflects that the court's charge to the jury contained the following:

"Our law provides that to be guilty of capital murder, a Defendant must have acted intentionally and knowingly in causing the death of the Deceased. Unless Defendant so acted intentionally and knowingly to cause death, he can not be convicted of capital murder. Therefore, if you believe, beyond a reasonable doubt, that Defendant did cause the death of Abbe Rodgers Hamilton by stabbing her with a knife as aforesaid, but you have a reasonable doubt as to whether he intentionally and knowingly caused the death, then you will acquit the Defendant of capital murder."

■ When a refused charge is substantially the same or is adequately covered

*shall be read in open court unless expressly waived by the defendant.*

"All such proceedings in felony cases shall be a part of the record and recorded by the court reporter." (Emphasis added).

by the charge given, there is no harm in failure to give the refused charge. *LeDuc v. State,* 593 S.W.2d 678; *Parr v. State,* 575 S.W.2d 522. We conclude the charge actually given was substantially the same and adequately covered the charge refused. Both charges required the jury to find that appellant intentionally caused the death of the deceased before he could be convicted of capital murder. No error is shown in the court's refusal to submit the requested charge.

In his eleventh ground of error, the amicus curiae contends that the court erred in sustaining the State's challenge for cause as to seven prospective jurors. He maintains that their exclusion for cause was inconsistent with *Witherspoon v. Illinois,* supra.

There was no objection during voir dire when the court sustained the seven challenges the amicus curiae now complains of. This Court has repeatedly held that the failure to object to the improper exclusion of veniremen waives that right and such exclusion cannot be considered on appeal. *White v. State,* 610 S.W.2d 504; *Brandon v. State,* 599 S.W.2d 567; *Russell v. State,* 598 S.W.2d 238; *Esquivel v. State,* 595 S.W.2d 516; *Burks v. State,* 583 S.W.2d 389. Appellant's failure to object to the alleged improper exclusion of the seven veniremen waives the error the amicus curiae seeks to present.

In his seventh ground of error, the amicus curiae challenges the sufficiency of the evidence to support the jury's verdict from the punishment phase. He contends the evidence was insufficient to prove that there is a probability that the appellant would commit criminal acts of violence in the future which would constitute a continuing threat to society.

During the punishment phase, the State presented evidence of appellant's previous convictions for burglary, attempted burglary, rape and assault with intent to commit rape. Two police officers testified that appellant's reputation as a peaceful and law-abiding citizen was bad.

In assessing punishment, the jury may consider all of the evidence adduced at trial on guilt or innocence. *Burns v. State,* 556 S.W.2d 270. The calculated nature of a defendant's criminal act and the forethought with which he coldly planned and executed the crime is probative of his propensity to commit future acts of violence. *O'Bryan v. State,* 591 S.W.2d 464. The circumstances of the capital offense itself, if severe enough, can be sufficient to sustain an affirmative finding to the second special issue. *Muniz v. State,* 573 S.W.2d 792. Reputation testimony is probative as to future acts of violence. *Ex Parte Alexander,* 608 S.W.2d 928. Finally, prior criminal convictions are probative of a defendant's propensity to commit future acts of criminal violence. *Felder v. State,* 564 S.W.2d 776.

The evidence in the instant case reveals that appellant was looking around Borger "for somebody to rape." Armed with a knife, he walked into the victim's home and stabbed her. Appellant bound the victim with cloth and stabbed her again when she continued to resist. The victim, six months pregnant, ultimately bled to death as a result of knife wounds to the neck which were one and three-quarters inches in depth. There was no evidence that appellant was under the influence or domination of anyone else when he committed the offense.

We find the evidence sufficient to support the jury's affirmative answer to the question of whether there is a possibility that appellant would commit criminal acts of violence in the future which would constitute a continuing threat to society. This ground of error is without merit.

In his seventh ground of error, appellant contends the trial court erred in refusing to impanel a jury to pass on the issue of his competency to stand trial. Appellant filed a pretrial motion which alleged that he was not competent to stand trial. The court refused to impanel a competency jury at the conclusion of a pretrial hearing held on February 10, 1978.

At that pretrial hearing, the Honorable Russell Busby testified that he had been appointed to defend appellant in the instant cause. Busby stated that appellant was often uncooperative and evidenced distrust toward his attorneys. In response to questioning from co-counsel the Honorable Gene Storrs, Busby testified as follows:

"Q. Do you feel, based upon the experiences that you have had with Mr. Hawkins, that he in fact satisfies that statutory requirement? Do you feel like he is competent, based upon what you have seen him do, to assist you or assist me at the present time in his defense in the trial on the merits of this cause?

"A. I think that probably he would not be competent, in my opinion, to assist on a full-time basis and that is the problem we are running into. There are times when he is cooperative and appears to be rational and assists in the manner in which he can. But, then, there are other times when he does not."

Storrs testified that he too had been appointed to defend appellant. He stated that appellant's decisions on when to cooperate with his attorneys was not based upon "rational sound reasoning." In response to questioning from Busby, Storrs testified:

"A. Yes sir. In my opinion, Mr. Hawkins is not competent to assist either me or you in the preparation or presentation of his defense, especially in the presentation of the defense due to the fact that during the course of a trial such as this, a great many critical decisions arise that have to be made by the defendant, hopefully based upon advice of counsel. Due to my inability to predict when he is going to become distrustful of me and what events, whether it's significant or non-significant, that will trigger that, there is no way to tell you or the Court that I can in fact aid him in the entirety of this trial."

During the competency hearing, the court examined reports prepared by two psychologists and a psychiatrist. All of the reports concluded that appellant was competent to stand trial.

At the conclusion of the hearing the court stated as follows:

"THE COURT: All right, Counsel, I have, of course, listened very carefully to the testimony today and studied the reports of the psychiatrists. Taking into consideration all the factors involved here, including these psychiatrists' reports, psychologists' reports, the evidence I have heard today and the previous testimony I have heard in this case from the Defendant himself, I do not find in this case reasonable grounds for convening a competency hearing. I feel that at this point, at least, there is no evidence before this Court sufficient to raise the question of competency in such a way that it would require me to conduct a separate trial on the question of competency. Therefore, I am going to overrule the Motion for Competency Trial in the case...."

Art. 46.02, Sec. 2(a), V.A.C.C.P., provides as follows with regard to raising the issue of incompetency prior to trial:

"The issue of the defendant's incompetency to stand trial shall be determined in advance of the trial on the merits if the court determines there is evidence to support a finding of incompetency to stand trial on its own motion or on written motion by the defendant or his counsel filed prior to the date set for trial on the merits asserting that the defendant is incompetent to stand trial."

With regard to a competency jury being impaneled, Art. 46.02, Sec. 4(a), supra, provides:

"If the court determines that there is evidence to support a finding of incompetency to stand trial, a jury shall be impaneled to determine the defendant's competency to stand trial. This determination shall be made by a jury that has not been selected to determine the guilt or innocence of the defendant. If the

defendant is found incompetent to stand trial, a further hearing may be held to determine whether or not the defendant is mentally ill and requires observation and/or treatment or hospitalization in a mental hospital for his own welfare and protection or the protection of others or whether he is a mentally retarded person as defined in The Mentally Retarded Persons Act (Article 3871b, Vernon's Texas Civil Statutes), and requires commitment to a mental retardation facility."

In *Sisco v. State,* 599 S.W.2d 607, this Court considered a contention similar to that which appellant now raises. In that case, the defendant argued the trial court should have impaneled a competency jury at the conclusion of a pretrial hearing. At that hearing, the court considered evidence consisting of a doctor's report that the defendant was competent to stand trial. Additionally, the court heard evidence that the defendant was mildly retarded with a low IQ and was unable to consult with his lawyer and was unresponsive about relating the facts of the case to his counsel. At the conclusion of the hearing, the court refused to impanel a competency jury basing its decision upon the doctor's report indicating competency. In finding that the trial court had applied an erroneous standard in determining whether to impanel a competency jury, this Court stated:

"We are, therefore, constrained to hold that, in determining after hearing held in advance of a trial on the merits whether 'there is evidence to support a finding of incompetency to stand trial, the trial court is to assay just that evidence tending to show incompetency, putting aside all competing indications of competency, to find whether there is some evidence, a quantity more than none or a scintilla, that rationally may lead to a conclusion of incompetency. Because the trial court did not apply the standard of our holding but, instead, based its determination on the competing medical report of competency, we must abate the appeal in order for the trial court to do so." *Sisco v. State,* supra at 613.

The State argues that the evidence presented during the pretrial hearing was insufficient to require the court to impanel a jury to pass on competency. The State relies on *Johnson v. State,* 564 S.W.2d 707; *Paul v. State,* 544 S.W.2d 668; *Ballard v. State,* 514 S.W.2d 267. Reliance on those cases is misplaced in that each of them dealt with the question of halting a trial which was in progress in order to conduct a competency hearing. As held in *Sisco,* the "bona fide doubt" standard is not applicable to a pretrial procedure under Art. 46.02, Sec. 2(a), supra.

On October 1, 1980, following a hearing in the trial court, this Court concluded that there was sufficient evidence that appellant's decision to proceed pro se in this appeal was knowingly and intelligently made. To the extent that such a conclusion was a finding of competency at that time, we note that appellant's trial was held some thirty-one months prior to our order granting appellant's motion to proceed pro se on appeal. This Court has previously found that mental competency is not fixed and unalterable over time. *Almand v. State,* 536 S.W.2d 377; *Bledsoe v. State,* 519 S.W.2d 646.

We conclude that the trial court erred in failing to impanel a competency jury at the conclusion of the pretrial hearing. The testimony from Busby and Storrs constituted a quantity of evidence more than none or a scintilla, that rationally may have led to a conclusion by a jury of incompetency.

Under our holdings in *Brandon v. State,* 599 S.W.2d 567, *Caballero v. State,* 587 S.W.2d 741, and *Ex Parte Winfrey,* 581 S.W.2d 698, this cause is remanded for further proceedings. Those proceedings should determine if it is possible to conduct a retrospective competency hearing and, if it is, to impanel a jury to pass on the issue of appellant's competency at the time he stood trial in the instant cause.

If it is not possible to make such a retrospective determination of appellant's competency at the time he stood trial, or if the competency jury determines that appellant was incompetent at the time he stood trial,

then appellant must be granted a new trial. If the court determines it is possible to hold such a hearing and the jury finds that appellant was competent at trial, the sentence shall remain in effect and this Court will consider on appeal only those matters which relate to the retrospective competency hearing. Except for the issue concerning a competency jury, all of the contentions presented both by appellant and the amicus curiae are without merit.

The appellant shall be remanded to the custody of the Sheriff of Lubbock County. The trial court shall conduct the hearing within 90 days from the issuance of our mandate, and may make further orders in accordance with this opinion.

It is so ordered.

ONION, P.J., and McCORMICK, J., concur in results.

TEAGUE, J., dissents.

MILLER and CAMPBELL, JJ., not participating.

CLINTON, Judge, dissenting.

For the reasons expressed in my dissenting opinion in *Crawford v. State*, 617 S.W.2d 925 (Tex.Cr.App.1980) (Opinion on Appellant's Motion for Rehearing), I dissent to the majority's overruling the eleventh ground of error advanced by the amicus curiae here for the reason that no objection was voiced to the trial court's exclusion of seven prospective jurors for cause where the State had failed to meet its burden of establishing their disqualification.

For the reasons discussed in my dissenting opinion in *Russell v. State*, —— S.W.2d —— (Tex.Cr.App., No. 66,410, delivered July 6, 1983), I dissent to the majority's overruling the amicus curiae's ninth ground of error, which alleges the trial court erred in refusing to define "deliberately" within the meaning of Article 37.071(b)(1), V.A.C.C.P. in its instructions to the jury at the punishment phase.

With respect to appellant's fifth ground of error, I would point out that *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), holds that the duty to disclose is *not* limited to situations where a request is made by an accused; the contrary statement by the majority is erroneous, and if *Iness v. State*, 606 S.W.2d 306 (Tex.Cr.App.1980) so held it should be overruled. See *Whitchurch v. State*, 650 S.W.2d 422 (Tex.Cr.App.1983) (Dissenting Opinion).

## OPINION ON STATE'S MOTION FOR REHEARING

ODOM, Judge.

On original submission the Court remanded this cause for a competency hearing. By motion for rehearing the State challenges that holding. Appellant, however, has now expressly waived that issue and withdrawn it from the appeal. Accordingly, we grant the State's motion for rehearing and affirm the judgment of the trial court.