**Russell Kent DICKINSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–83–00101–CR.**

Court of Appeals of Texas, Dallas.

Jan. 13, 1984.

Arch McColl, Bruner, McColl, McColloch & McCurley, Dallas, for appellant.

Henry Wade, Dist. Atty., Anne Wetherholt, Asst. Dist. Atty., for appellee.

Before AKIN, VANCE, and ROWE, JJ.

AKIN, Justice.

This appeal is from a conviction for rape of a child for which the appellant was assessed a twenty-year sentence. The appellant contends that the evidence is insufficient to support his conviction because there is insufficient evidence to prove that sexual intercourse actually occurred and that the trial court erred in overruling objections to comments by the prosecutor on the appellant's failure to testify. Because appellant's contentions are without merit, we affirm.

The victim in this case was a nine-year-old who had an I.Q. of 35. The trial court ruled that her intelligence was so limited

that she was incompetent to testify. Thus, the State was unable to present direct testimony by the victim that sexual intercourse had occurred. The basis of the appellant's first contention is that the State failed to present sufficient circumstantial evidence to prove penetration occurred. We disagree.

■ Sexual intercourse is defined by TEX.PENAL CODE ANN. § 21.01(3) (Vernon 1974) as: "Any penetration of the female sex organ by the male sex organ." Proof of the slightest penetration is sufficient to sustain this element of the offense of rape and penetration may be proved by circumstantial evidence. *Luna v. State*, 515 S.W.2d 271, 273 (Tex.Cr.App.1974). The standard for review in circumstantial evidence cases was outlined in *Wilson v. State*, 654 S.W.2d 465, 471 (Tex.Cr.App. 1983) (On Rehearing) (*en banc*) as follows:

It follows that circumstantial evidence should not be tested by an *ultimate* "standard for review" different from direct evidence; the standard in both kinds of cases is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

We conclude that the evidence presented was sufficient to show sexual penetration beyond a reasonable doubt.

■ The complainant's mother, her twelve-year-old brother, and a fourteen-year-old male family friend testified that they viewed appellant lying, face to face, on top of the complainant. The appellant's pants were pulled down to his ankles and the complainant's swim suit was also pulled down to her ankles. All three witnesses stated that the appellant's body was moving up and down while he was on top of the complainant. The complainant's mother stated that it appeared to her that the appellant was having sexual intercourse with her daughter. However, a companion of the appellant on this occasion testified that when he and the other three witnesses came upon the complainant and appellant, the appellant was standing over the complainant with his pants raised and fastened.

The testimony of the physician who examined the complainant soon after the incident and of the forensic technician who analyzed the specimen taken by the physician also were introduced. Both of the witnesses stated that in their opinion the complaining witness had recently had sexual intercourse. The basis of this opinion was the amount of and depth at which sperm and seminal fluid were detected in the complainant's vaginal cavity. On cross-examination the appellant attempted to impeach these opinions by questioning these expert witnesses on whether the presence of sperm and seminal fluid could not be explained by drainage if the appellant had ejaculated outside the complainant's body. Both witnesses discounted this possibility. Based on the evidence of the appellant's actions when discovered with the complainant, and the physical evidence indicating sexual intercourse, we conclude that the evidence is sufficient to prove that appellant had sexual intercourse with the complainant.

■ The appellant next contends that, during the following sequence, the prosecutor commented on his failure to testify:

And you know, another pretty important evidence that you can consider is what you've observed in this courtroom. The demeanor in this courtroom of this man right here. You know, when [the complainant] was led into that courtroom she hid her face. She hid her face in shame.

DEFENSE COUNSEL: Your Honor, we'd object to that because there isn't any evidence that she hid her head in shame.

THE COURT: Sustained.

DEFENSE COUNSEL: We ask that the jury be instructed to disregard the remarks and testimony of counsel.

THE COURT: The jury will disregard the last comment of the Assistant District Attorney and not consider it for any purpose.

DEFENSE COUNSEL: We move for a mistrial.

THE COURT: Your motion for mistrial is denied.

PROSECUTOR: Well, you know that Selena hid her face. You haven't seen one iota of remorse, one iota of shame.

DEFENSE COUNSEL: Your Honor, we object to the prosecutor's coming over and pointing at the defendant and saying that we have never seen any remorse or shame as an indirect comment on the defendant's failure to testify, and consequently we object to it.

THE COURT: Your objection is overruled.

DEFENSE COUNSEL: Exception.

PROSECUTOR: And you didn't see any pity for that nine-year-old retarded girl that was led into this courtroom from that man over there.

DEFENSE COUNSEL: Your Honor, we object to that the prosecutor was pointing directly at the defendant when she said "that man over there" and that's an indirect comment upon the defendant's failure to testify and we so move the Court.

THE COURT: Your objection is overruled.

DEFENSE COUNSEL: Exception.

The basis of appellant's contention with respect to these arguments is that remorse, shame, or pity could be communicated to the jury only through his testimony. We disagree and hold that the comments directed the jury's attention only to the appellant's demeanor in court and not to the absence of his testimony.

In order for a comment to be considered erroneous it must:

when viewed from the jury's standpoint, ... be manifestly intended or of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify.... It is not sufficient that the language might be construed as an implied or indirect illusion.... If the remark called the jury's attention to the absence of evidence that only *the testimony* of the defendant could supply, the implication as a comment on the defendant's failure

*to testify* is a necessary one and the conviction must be reversed. *Banks v. State*, 643 S.W.2d 129, 134 (Tex.Cr.App. 1982). [Emphasis Added]

The prosecutor in this case specifically pointed the jury's attention to the appellant's "demeanor" and not to his silence. Further, the prosecutor specifically directed the jury's attention to what they "saw" and not what they could have heard. Thus it is apparent that the prosecutor was not attempting to highlight a failure on the appellant's part to make a verbal expression of "remorse, sorrow, or pity."

Our conclusion that remorse is subject to physical as well as verbal manifestations is supported by *Hawkins v. State*, 660 S.W.2d 65 (Tex.Cr.App.1983). In *Hawkins,* the Court of Criminal Appeals examined the following argument which was made during the punishment stage of a capital murder trial. The prosecutor stated:

I think another way that you might be able to determine whether or not he is likely to do a criminally violent act in the future would be to look to the Defendant himself. You have been able to observe him during this trial. Have you seen any showing of remorse? Have you seen him—a showing of any type of reform or I'm sorry I did this? Ladies and gentlemen, you'll just have—

and

Ladies and gentlemen, let me clear that up a little bit. What I am speaking of when I am speaking of no remorse is the fact that the Defendant has been sitting here like the rest of the Counsel for six weeks and you have had ample opportunity to observe his physical actions in the courtroom and my remarks are only limited to your physical observation of him.

In a plurality opinion the *Hawkins* court stated: "[t]he complained of argument specifically referred the jury to their observations of appellant during the course of trial. We conclude that the arguments were not such that the jury would naturally and necessarily take them as comments upon the appellant's failure to testify." *Haw-*

*kins* at 79. No mention is made in *Hawkins* of the possibility that remorse is a state of mind which is subject only to verbal expression. *Hawkins* holds that when the prosecutor limits her argument to the jury's view of a defendant's demeanor, her statements will not be viewed as a comment on the defendant's failure to testify.

We do not consider the cases cited by the appellant persuasive on this contention. For his proposition that remorse is such a personal state of mind that it must come only through testimony, the appellant apparently relies on the following language in *Thomas v. State*, 638 S.W.2d 481, 484 (Tex. Cr.App.1982) (*en banc*):

> Contrition is a dogma of theology. It connotes "sincere sorrow for sin, wrongdoing or offense, especially as arising from a sense of baseness of sin and of God's loving mercy." ... It is, in short, a state of mind—and a highly personal one at that. Indicia of contriteness is necessarily generated after an offense by the one who is sorrowful for what he has done. That one is contrite about it must be communicated in order for others to know.

*Thomas* concerned an argument where the prosecutor commented on the failure of the defendant's character witness to testify that he had communicated remorse to them. *Thomas* held that argument was improper because self-serving declarations of contrition would not have been admissible, and thus, the prosecutor was attempting to comment on the failure of the character witnesses which they could not properly make. The holding of *Thomas* does not address whether the mere mention of a lack of remorse on the part of a defendant must be construed as a comment on the defendant's failure to testify. Neither does the language in *Thomas* imply that contrition or remorse cannot be manifested by a defendant's demeanor before the jury. Thus, we do not consider *Thomas* to be controlling here.

The appellant also relies on a footnote found in *Elkins v. State*, 647 S.W.2d 663, 667 (Tex.Cr.App.1983). The footnote, which is dicta, stated that the argument "No remorse, nothing whatsoever, he didn't show you anything" was a comment on the defendant's failure to testify and should be avoided upon retrial. The appellant places great emphasis on the fact that the prosecutor in *Elkins* said that the defendant didn't "show" anything while the prosecutor in the instant case stated to the jury they had not "seen" remorse on the part of the appellant. According to appellant, this demonstrates the similarity of the arguments because "the words "show" there and "seen" here in their context refer to a lack of testimony, not to any physical expressions of the accused." We do not disagree that show or seen could refer to testimony in certain contexts; however, the context in this case demonstrates that it was demeanor and not testimony to which the prosecutor was referring. We conclude that the footnote in *Elkins* does not control the present case because the prosecutor in *Elkins*, at least in the portion of the argument quoted, did not limit the jury's consideration solely to the defendant's demeanor.

■ Finally, the appellant asserts that the prosecutor's physical action of pointing at him when she noted his lack of demonstrated remorse adds credence to his contention that she was remarking on his failure to verbally express remorse. We cannot agree because the prosecutor's act in pointing does not show that he should have testified but rather shows that the prosecutrix was directing the jury's attention to appellant's expression and demeanor.